**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARRISON SUAREZ<br><br>                    *Plaintiff,*<br><br>          v.<br><br>COMPASS COFFEE LLC, MICHAEL<br>HAFT, and ROBERT HAFT<br><br>                    *Defendants.* | Civil Action No. 1:25-cv-89-SLS |

**DEFENDANTS COMPASS COFFEE LLC, MICHAEL HAFT, AND
ROBERT HAFT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS COUNTS I, II, IV AND V OF PLAINTIFF'S COMPLAINT
<u>AGAINST ALL DEFENDANTS AND DISMISS COUNT III AGAINST ROBERT HAFT</u>**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................. 1

FACTUAL SUMMARY ........................................................................................ 4

ARGUMENT ........................................................................................................ 9

    I.    The Court Should Dismiss Count I Because it Fails to Allege a
    RICO Claim and is Time-Barred. ........................................................... 10

        A.    Count I Alleges a Business Dispute and Unrelated Actions
        Regarding Covid Relief Funds, None of Which Are
        Cognizable Under RICO. ............................................................. 10

        B.    Even if Count I Alleges a RICO Claim, the Count is Time-
        Barred Based on the Complaint. .................................................. 17

        C.    Even if Count I Alleges a RICO Claim, Plaintiff has no
        standing to sue over the "Covid-Relief Scheme" and
        Because the Hafts Caused Him No Injury. ................................. 21

    II.    The Court Should Decline to Exercise Supplemental Jurisdiction
    Over the Rest of the Counts. ................................................................... 25

        A.    Count II is Not Pled with Particularity and is Time-Barred
        Based on the Documents Plaintiff Cites. .................................... 25

        B.    Count III Does Not State a Claim for Breach of Contract
        Against Robert Haft. .................................................................... 29

        C.    Count IV Does Not State a Claim for Breach of the Implied
        Duty of Good Faith and Fair Dealing. ....................................... 30

        D.    Count V Does Not State a Claim for Breach of the Duties
        of Loyalty and Care. ................................................................... 33

CONCLUSION ................................................................................................... 39

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

\* *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*,
  768 F. App'x 446 (6th Cir. 2019) ..........................................................14, 15, 16, 17

\* *Adler v. Loyd*,
  496 F. Supp. 3d 269 (D.D.C. 2020) ........................................1, 10, 11, 12, 13, 24

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987)........................................................................................17

*Airborne Health, Inc. v. Squid Soap, LP*,
  984 A.2d 126 (Del. Ch. 2009)......................................................................31, 33

\* *Am. Trucking Ass'ns, Inc. v. Dep't of Transp.*,
  492 F. Supp. 566 (D.D.C. 1980)...................................................................22, 25

*Antoine v. U.S. Bank Nat'l Ass'n*,
  547 F. Supp. 2d 30 (D.D.C. 2008)................................................................26, 27

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)............................................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................9

*B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*,
  171 A.3d 140 (Del. Ch. 2017).............................................................................34

*Bartlett v. Overslaugh*,
  169 F. Supp. 3d 99 (D.D.C. 2016).......................................................................34

*BET FRX LLC v. Myers*,
  2019-0894-KSJM, 2022 WL 1236955 (Del. Ch. Apr. 27, 2022) ...........................37

*Bridges v. Lezell L., PC*,
  842 F. Supp. 2d 261 (D.D.C. 2012)..........................................................11, 12, 13

*Brookfield Asset Mgmt., Inc. v. Rosson*,
  261 A.3d 1251 (Del. 2021) ................................................................................36

\* *Buck v. Viking Holding Mgmt. Co. LLC*,
  No. N20C-08-249 AML, 2021 WL 673459 (Del. Super. Ct. Feb. 22, 2021)....................31, 32

ii

\* = Principal authority

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
  274 F. Supp. 2d 86 (D.D.C. 2003) ...................................................................21

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ........................................................................30

*Chalabi v. Hashemite Kingdom of Jordan*,
  503 F. Supp. 2d 267 (D.D.C. 2007), *aff'd*, 543 F.3d 725 (D.C. Cir. 2008) ...........20

*City of Harper Woods Employees' Ret. Sys. V. Olver*,
  589 F.3d 1292 (D.C. Cir. 2009) .......................................................................33

\*  *Clifford Paper, Inc. v. WPP Invs., LLC*,
  No. 2020-0448-JRS, 2021 WL 2211694 (Del. Ch. June 1, 2021) ..............37, 38, 39

*Comm. to Def. U.S. Const. v. Moon*,
  776 F. Supp. 568 (D.D.C. 1991) ......................................................................20

*CorpCar Servs. Houston, Ltd. V. Carey Licensing, Inc.*,
  325 A.3d 1235 (D.C. 2024) .............................................................................29

*Doe v. George Washington Univ.*,
  366 F. Supp. 3d 1 (D.D.C. 2018) .....................................................................31

*Doe v. U.S. Dep't of Justice*,
  753 F.2d 1092 (D.C. Cir. 1985) .......................................................................28

\*  *E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ..........11, 12

*Ebling v. U.S. Dep't of Just.*,
  796 F. Supp. 2d 52 (D.D.C. 2011) ....................................................................21

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*,
  No. 2017-0500-JRS, 2018 WL 2727542 (Del. Ch. June 6, 2018) .........................31

*Gardner v. Erie Ins. Co.*,
  639 F. Supp. 3d 135 (D.D.C. 2022) ..................................................................10

\*  *Greenpeace, Inc. v. Dow Chem. Co.*,
  808 F. Supp. 2d 262 (D.D.C. 2011) ..........................................................22, 23, 24

*Guttenberg v. Emery*,
  41 F. Supp. 3d 61 (D.D.C. 2014) .....................................................................21

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003) .........................................................................29

iii

\* = Principal authority

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)...................................................................................13, 14

*Hancock v. Urban Outfitters, Inc.*,
    830 F.3d 511 (D.C. Cir. 2016) ...............................................................21

*In re Happy Child World, Inc.*,
    No. 3402-VCS, 2020 WL 5793156 (Del. Ch. Sept. 29, 2020) ................36

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)...................................................................................22

*Hinton v. Corr. Corp. of Am.*,
    624 F. Supp. 2d 45 (D.D.C. 2009) ..........................................................9

*Holmes v. Sec. Invs. Prot. Corp.*,
    503 U.S. 258 (1992)................................................................................22

*Hueter v. Kruse*,
    No. 1:20-cv-03686 (TNM), 2022 WL 823066 (D.D.C. Mar. 18, 2022)..................................25

*In re Est. of Chambers*,
    No. 2018-0630-SEM, 2019 WL 4110674, at *3 (Del. Ch. Aug. 29, 2019).....................36, 39

*Jacobsen v. Oliver*,
    201 F. Supp. 2d 93 (D.D.C. 2002) ..........................................................31

*James v. District of Columbia*,
    869 F. Supp. 2d 119 (D.D.C. 2012) .........................................................9

*K St. Devs., LLC v. Tchrs. Ins. & Annuity Ass'n of Am.*,
    69 F. Supp. 3d 45 (D.D.C. 2014) ............................................................29

*King v. Kitchen Magic, Inc.*,
    391 A.2d 1184 (D.C. 1978) .....................................................................28

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009)..................................................................31

*Lee v. Bos*,
    874 F. Supp. 2d 3 (D.D.C. 2012) .............................................................26

*Ling Yuan Hu v. George Washington Univ.*,
    766 F. Supp. 2d 236 (D.D.C. 2011)....................................................28, 29

*Litman v. Prudential-Bache Props., Inc.*,
    611 A.2d 12 (Del. Ch. 1992)....................................................................38

iv

* = Principal authority

*Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*,
   357 F. Supp. 2d 287 (D.D.C. 2005) ...........................................................28

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ........................................................................35

*Ogus v. SportTechie, Inc.*,
   No. 2018-0869-AGB, 2020 WL 502996 (Del. Ch. Jan. 31, 2020) ............35

*Pearson v. District of Columbia*,
   644 F. Supp. 2d 23 (D.D.C. 2009) ............................................................10

\*   *Poblete v. Rittenhouse Mort. Brokers*,
   675 F. Supp. 2d 130 (D.D.C. 2009) .....................................................26, 27

*Richardson ex rel.. of Richardson Living Tr. v. Clark*,
   No. 2019-1015-SG, 2020 WL 7861335 (Del. Ch. Dec. 31, 2020) ...........37

\*   *Robertson v. Cartinhour*,
   867 F. Supp. 2d 37 (D.D.C. 2012), *aff'd*, 553 F. App'x 1 (D.C. Cir. 2014)..........13, 14, 15, 17

*Robinson v. Deutsche Bank Nat. Tr. Co.*,
   932 F. Supp. 2d 95 (D.D.C. 2013) ............................................................31

*Rotella v. Wood*,
   528 U.S. 549 (2000)...................................................................................17

*Sandza v. Barclays Bank PLC*,
   151 F. Supp. 3d 94 (D.D.C. 2015) ..............................................................9

\*   *Solano v. Delmed, Inc.*,
   759 F. Supp. 847 (D.D.C. 1991) .....................................................17, 18, 19

*Stewart v. BF Bolthouse Holdco, LLC*,
   No. 8119-VCP, 2013 WL 5210220 (Del. Ch. Aug. 30, 2013) .................31

*Swomley v. Watt*,
   526 F. Supp. 1271 (D.D.C. 1981) ..............................................................25

*Thornton v. Bernard Techs., Inc.*,
   No. 962-VCN, 2009 WL 426179 (Del. Ch. Feb. 20, 2009)......................37

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ..................................................................37, 38

*United States v. Kellogg Brown & Root Servs.*,
   800 F. Supp. 2d 143 (D.D.C. 2011) .............................................................9

v

\* = Principal authority

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
  235 F.3d 629 (D.C. Cir. 2001) ...................................................................................1, 10, 11

*York Lingings v. Roach*,
  No. 16622-NC, 1999 WL 608850 (Del. Ch. July 28, 1999)....................................................34

**Statutes**

\*     RICO Act, 18 U.S.C. §§ 1962(c) & (d) ............................................................... *passim*

D.C. Code § 12-301(8)...........................................................................28, 29, 34, 35

D.C. Code § 29-105.01(a)(1) ....................................................................................33

D.C. Code § 29-804.09 .............................................................................................33

Del. Code Ann. Title 6, § 18-1003 ...........................................................................38

**Other Authorities**

\*     Fed. R. Civ. P. 9(b) ...............................................................................9, 25, 26, 27

\*     Fed. R. Civ. P. 12(b)(6)...................................................................................... *passim*

\* = Principal authority

## INTRODUCTION

This case presents a single federal cause of action for an alleged violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c) & (d).  As the Court is aware, Congress enacted RICO to "seek the eradication of organized crime in the United States," not to federalize "ordinary business disputes."  *Adler v. Loyd*, 496 F. Supp. 3d 269, 278–79 (D.D.C. 2020) (internal citations omitted).  Under mandatory D.C. Circuit law, the Court scrutinizes alleged RICO claims to ensure that the statute is not misapplied beyond its proper purpose.  *Id.* at 279. Under that scrutiny, Plaintiff's story is not one of mafiosos managing a criminal enterprise, but a pained postmortem of a business divorce by an estranged co-founder.  RICO protects communities who are being victimized by vicious criminals, not a single person allegedly mistreated by his business partners.  *See* Section I.A.  RICO therefore does not apply.

Even if RICO could apply, based on Plaintiff's allegations and the documents he cites in his Complaint, the claim is time-barred under RICO's four-year statute of limitations.  Plaintiff contends that he was misled into believing that he was always on equal footing with his business partner, when in fact he wasn't, because his partner allegedly used LLCs to conceal his larger interest in the business they co-founded, Compass Coffee.  But in the Complaint, Plaintiff admits he discovered the truth in March 2020, five years ago.  *See* Section I.B.  Accordingly, the claim is time-barred.

Plaintiff knows these flaws.  To try to distract the Court from them, he engrafts onto the RICO claim an alleged fraud on the government, a so-called "Covid Relief Scheme" under which Compass Coffee allegedly squandered Covid relief funds from the Small Business Administration ("SBA") that should have been spent on rent.  But these allegations cannot save the RICO claim because they fail RICO's "relatedness" requirement, which requires racketeering activity to constitute a pattern of continuous and related acts. *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,

235 F.3d 629, 633 (D.C. Cir. 2001). Nowhere is there a pattern, much less a continuous and related one. Moreover, the claim, even if credited, would be the Government's to vindicate, not Plaintiff's, because the SBA was allegedly injured by the scheme.[1] All that Plaintiff can muster is that, according to Plaintiff, after Compass allegedly misspent the SBA's money, Compass then refused to repay Plaintiff for some defense costs he spent in landlord-tenant litigation. But the two are unrelated, because the Covid relief scheme did not prevent the payment of rent. The infusion of government funds, if anything, made rent payment easier than it otherwise would have been. Once again, this boils down to a business dispute, inappropriate for RICO. Accordingly, the case should be dismissed. *See* Section I.C.

This leaves the state law claims pleaded under Counts II-V. The Court should decline to exercise supplemental jurisdiction over those claims. If, however, the Court were to consider those claims, they too should be dismissed. Count II alleges fraud, but Plaintiff fails to plead that fraud with particularity as required by Rule 9(b). *See* Section II.A.**Error! Reference source not found.**. Moreover, based on Plaintiff's allegations and the documents that he cites in his Complaint, Plaintiff allegedly discovered the fraud on or about August 20, 2020, making his claim time-barred under the three-year statute of limitations. *See* Section II.A.2.

Count III alleges that Defendants breached the Compass Coffee Operating Agreement by refusing to provide Plaintiff a proper, fair-market valuation of his ownership interest in the company. Defendants do not dispute that Plaintiff was entitled to a fair market valuation. But Defendants Michael Haft and Compass Coffee, in their contemporaneously filed motion for partial summary judgment for Count III, demonstrate that it is undisputed that Plaintiff was provided one.

---

[1] Nothing of the sort ever happened. Compass in fact was audited by the SBA, as is customary under the Covid relief programs, and Compass passed with flying colors.

*See* Defs.' Mem. Supp. Mot. Partial Summ. J. at 5–9, ECF No. 12-1.  What's more, it is uncontested that Plaintiff then walked away and refused to exercise his right to a repurchase.  Accordingly, the Operating Agreement was not breached, and Defendants Michael Haft and Compass Coffee are entitled to judgment as a matter of law.  *See id*.  For purposes of <u>this</u> Motion, Count III should be dismissed as to Defendant Robert Haft (Michael's father), because he was not a party to the operating agreement that Plaintiff alleges he breached.  *See* Section II.B.

Count IV alleges a breach of the implied duty of good faith and fair dealing.  But that Count fails to state a claim because it impermissibly duplicates Plaintiff's breach of contract claim in Count III.  The subject of Plaintiff's fair market valuation of Plaintiff's Units in Compass is *expressly* covered by the Operating Agreement.  Therefore, there is no occasion to consider whether an *implied* duty has been breached.  *See* Section II.C.

Last, Count V alleges breaches of fiduciary duty against Michael and Robert Haft.  Count V fails to state a claim because Delaware law governs, not the District of Columbia law that Plaintiff cites.  Moreover, the Count duplicates the substance of Counts I-IV and therefore should be dismissed for all reasons discussed in connection with those Counts.  *See* Section II.D.

In sum, because Plaintiff's RICO claim fails, the Court should dismiss Count I and decline to exercise supplemental jurisdiction over the remaining state law claims.  In the alternative, if the Court proceeds to the state-law claims, it should dismiss Counts II, IV, and V against all Defendants, dismiss Count III as against Robert Haft, and grant Defendants' concurrently filed Motion for Partial Summary Judgment.  In all events, however, the Court should stay discovery pending its resolution of this Motion and the Motion for Partial Summary Judgment on Count III. *See* Defs.' Mot. to Stay, ECF No. 13.  Together, these Motions would be dispositive if granted.

*Id.* at 3–5.  Discovery is not needed for Plaintiff to oppose either Motion, and Plaintiff would not be prejudiced by such a stay.  *Id.* at 5–7.

**FACTUAL SUMMARY**[2]

Compass Coffee is a coffee roastery with twenty locations around Washington D.C. and a successful consumer packaged goods business.  Compl. ¶ 3.  Michael Haft and Plaintiff co-founded Compass Coffee as a Delaware limited liability company in November 2013.  *Id.* ¶¶ 3, 20, 21.  Robert Haft is Michael's father and has invested in and otherwise supported the development of Compass Coffee since its founding.  *Id.* ¶ 31.

**The Alleged Ownership Concealment Scheme**

Plaintiff claims that Michael and Robert Haft misled him about the makeup of Compass Coffee's ownership through what he terms the "Ownership Concealment Scheme."  *Id.* ¶¶ 40–63.  Plaintiff alleges that the Hafts "deceived [him] into believing that he and Michael [Haft] were equal partners in Compass," when "they were not," and that "Michael [Haft] secretly owned a larger share of the business from the very beginning, concealing his ownership interest behind a web of LLCs."  *Id.* ¶ 5.  That alleged "web" of LLCs originates from "Colby Bartlett LLC," which was a 50% owner of Compass Coffee when it was formed in 2013.  *Id.* ¶¶ 40–41.  Because Michael Haft owned a majority of Colby Bartlett, Plaintiff alleges, he therefore owned a "significantly larger share of Compass from the very beginning of the business—a fact Michael and Robert [Haft] actively concealed from [Plaintiff] for years."  *Id.* ¶ 42.  Plaintiff further asserts that on May 7, 2015, Robert Haft "emailed Michael [Haft] and [Plaintiff] to report that Colby Bartlett had

---

[2]    For the purposes of this Motion, and as required by the applicable Rules of Civil Procedure, Defendants assume that any non-conclusory allegations in Plaintiff's Complaint and *reasonable* inferences drawn therefrom are true, without agreeing that they are true.  If this matter proceeds, Defendants will, in fact, prove that many of Plaintiff's allegations are demonstrably false or, at best, incomplete.

4

transferred its 50% interest in Compass to Octa LLC." *Id.* ¶ 43. Plaintiff alleges that Octa is 100% owned by Michael Haft. *Id.*

According to Plaintiff, this Ownership Concealment Scheme had the purpose of defrauding Plaintiff into "relinquishing ownership and authority in Compass." *Id.* ¶ 61. Plaintiff alleges that because of the Ownership Concealment Scheme "he was defrauded into "relinquishing his 50% ownership of the Compass brand intellectual property." *Id.* ¶ 168. Plaintiff alleges that he owned a 50% interest in HaftSuarez LLC, that HaftSuarez owned the Compass Coffee "brand," and that on August 2, 2018, HaftSuarez assigned "ownership of the Compass brand to Compass LLC for free." *Id.* ¶¶ 59, 170. Plaintiff alleges that he only assigned his ownership interest in HaftSuarez, and that HaftSuarez in turn only assigned the brand to Compass, because Plaintiff was misled into believing that "he and Michael [Haft] would continue to be equal owners of the brand post-transfer," based on misrepresentations from the Hafts from years prior that he "was an equal partner to Michael and that they had his best interests at heart." *Id.* ¶ 59. Plaintiff claims that he was damaged because the brand was valued to be worth $34 million. *Id.* ¶¶ 59, 169. The valuation to which Plaintiff cites was issued to Plaintiff on August 20, 2020. **Exhibit A** (8/20/20 GSG Valuation) at 1 & *Exhibit 1* (valuing Compass Coffee's goodwill at $34,110,724).

### Plaintiff's Knowledge of Compass Coffee's Ownership

Despite his hand-waving about fraud and concealment, Plaintiff <u>admits</u> that in September 2018, more than six years ago, he "inadvertently discovered Octa's true ownership while reviewing documents in the process of Compass seeking a loan." Compl. ¶ 60. Plaintiff does not allege that he then, or ever, asked Defendants about the identities of the other LLCs that were owners in Compass, their ownership, or the allegedly false information that they provided. Plaintiff also does not allege that he asked to see the co-owners' formation documents or that Defendants refused

to show them. To the contrary, Plaintiff admits that Defendant Michael Haft uploaded Colby Bartlett's certificate of formation to Compass Coffee's shared drive in 2020, to which Plaintiff had access. *Id.* ¶ 63.

### The Unrelated Covid Relief Scheme

Plaintiff alleges a separate "Covid Relief Scheme" that is wholly distinct from the alleged Ownership Concealment Scheme. *Id.* ¶¶ 64–93. Plaintiff alleges that as the Covid-19 pandemic impacted Compass Coffee's finances, the company "applied for and received several loans and grants from the Small Business Administration (SBA) to replenish its empty bank accounts." *Id.* ¶¶ 64, 66. According to Plaintiff, the Hafts diverted these "Covid relief funds for impermissible uses and personal gain," including prepayment of debt owed by Compass Coffee to the Hafts and investments in bitcoin and Union Kitchen. *Id.* ¶¶ 77–80, 141. Plaintiff does not allege an explanation for connecting the "impermissible uses" to the Covid relief funds as opposed to other available Compass funds. *See id.*

Through a multi-step and irrational chain of causation, Plaintiff alleges that the Covid Relief Scheme resulted in Compass Coffee failing to indemnify Plaintiff for costs he incurred in defending a lawsuit over one of the company's leases. *Id.* ¶ 87. Plaintiff had jointly and severally guaranteed Compass Coffee's leases with Michael. *Id.* After Compass Coffee allegedly defaulted on its lease for 1401 Okie Street, Plaintiff was sued. *Id.*

As Plaintiff tells it, although the suit ultimately settled, Plaintiff "was forced to incur thousands of dollars in legal fees" that Compass Coffee "was obligated to reimburse" under the company's operating agreement. *Id.* Under the operating agreement Plaintiff refers to, Compass Coffee's obligation (and not the obligation of Michael and Robert Haft) to indemnify attorneys' fees is triggered "upon receipt of an undertaking by or on behalf of" Plaintiff. *See* **Exhibit B** (Sixth

Am. Operating Agreement) at 24.  Plaintiff asserts in a conclusory fashion that he provided "all the requisite documentation for reimbursement in December 2023," but he does not allege that he provided the undertaking.  Compl. ¶ 87.  Moreover, the December 2023 communication that he cites shows that he was asked for the undertaking but never provided it.  **Exhibit C** (12/23 Suarez-Haft e-mails).

 Plaintiff does not contend that obtaining the Covid relief funds somehow made rent payment less likely.  Instead, he argues that if Compass had properly used the SBA Covid funds, it would have had sufficient cash to pay its rent and, if it had done so, the landlord would never have sued Compass and its guarantors (including Michael Haft and Plaintiff), and Compass would have never refused to indemnify Plaintiff for his defense costs.  Compl. ¶ 165.

### Plaintiff's Termination from Compass Coffee and his Buyout Right

Plaintiff alleges that Michael Haft terminated his employment with Compass Coffee on July 19, 2021.  *Id.* ¶ 97.  Months later, on November 15, 2021, more than three years ago, Plaintiff claims that he informed the Hafts that he wanted to exercise his right to a repurchase of his ownership units in Compass Coffee under the company's Fifth Amended Operating Agreement.  *Id.* ¶¶ 100, 106.  Under that agreement, which Plaintiff repeatedly references and directly quotes in the Complaint, Plaintiff had the option of selling his ownership units back to Compass Coffee upon his termination.  *Id.* ¶ 102; **Exhibit D** (Fifth Am. Operating Agreement) at 20.  Section VI.10.1 of the Fifth Operating Agreement covers the procedure for repurchase of a Founder's units:

> The Founders, Michael Haft and Harrison Suarez ("The Founders") shall each have the option to sell part or all of their Units back to the Company for a period of 120 days from the effective date of termination, for any reason. The Repurchase Price of each Unit shall be the Fair Market Value as determined by a valuation firm (or accountant, or accounting firm) selected by the Founders, and paid for by the Company. Any repurchase shall be consummated within 30 days after

> determination of Fair Market Value of Units held by Founders (for the Company as a whole, and without any liquidity discounts, minority discounts, or lack of marketability for a closely held entity. The Company shall not have any right to repurchase Units from the Founders, unless Founders exercise their right to sell part or all of their Units back to the Company.

Compl. ¶ 102; **Exhibit D** at 20. Even though Section VI.10 imposes obligations only on "the Founders" (*i.e.*, Michael Haft and Plaintiff) and "the Company" (*i.e.*, Compass Coffee LLC), Plaintiff contends that <u>all</u> Defendants did not "use reasonable best efforts to consummate the repurchase of [Plaintiff's] founders shares as contemplated by Section VI.10, refusing to repurchase his shares . . . , and not paying [Plaintiff] the Fair Market Value of his Units . . . ." *Id.* ¶ 180.

## **The Tolling Agreement and Plaintiff's Filing of this Action**

Plaintiff cites to a tolling agreement that "Harrison and Michael executed," which Plaintiff relies on to render his claims timely. Compl. ¶ 128. According to Plaintiff, the agreement "tolled the statutes of limitations for any and all rights or claims that had not expired as of July 19, 2021 for the period from July 19, 2021 through July 31, 2024." *Id.* Examination of the agreement itself shows that Plaintiff's interpretation is incorrect. In truth, the tolling agreement states that the statute of limitations for any claims by the Parties—which the agreement defines as Plaintiff, Michael Haft, and Compass Coffee LLC (but <u>not</u> Robert Haft)—that "have not expired as of July 19, 2021 shall be tolled, with such tolling commencing upon the Effective Date [January 31, 2024] and ending on the Termination Date [July 31, 2024]." **Exhibit E** (Tolling Agreement) at 1–2. Therefore, the claims were tolled for 182 days (six months) from January 31, 2024 to July 31, 2024, and only as to Michael Haft and Compass. *Id.* Plaintiff filed this lawsuit on January 13, 2025. ECF No. 1.

## ARGUMENT

A Rule 12(b)(6) motion to dismiss "tests whether a plaintiff has properly stated a claim." *James v. District of Columbia*, 869 F. Supp. 2d 119, 120 (D.D.C. 2012); Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not required, a plaintiff must provide "more than an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient, and a court is not required to accept the plaintiff's legal conclusions as true. *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" above the speculative level. *Id.* (quoting *Twombly*, 550 U.S. at 570).

Additionally, any claims regarding fraud, including the RICO claims based on fraud claims as alleged here, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015). Rule 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This means that 'the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud.'" *United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 152 (D.D.C. 2011) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

On a 12(b)(6) motion to dismiss, courts may consider without converting to a motion for summary judgment documents "incorporated by reference in the complaint" or documents "upon which the plaintiff's complaint necessarily relies" even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss. *Hinton v. Corr. Corp. of*

*Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal citations omitted) (considering on a motion to dismiss a contract attached as an exhibit to defendant's motion to dismiss because, by pleading that the defendant had a duty to provide him with eye treatment and care, the plaintiff's complaint necessarily rested on the contract); *Pearson v. District of Columbia,* 644 F. Supp. 2d 23, 29 n.1 (D.D.C. 2009) (considering on a motion to dismiss several exhibits, including memoranda, e-mails, and letters, attached to defendant's motion to dismiss that were mentioned at least once in the complaint), *aff'd,* 377 F. App'x 34 (D.C. Cir. 2010); *Gardner v. Erie Ins. Co.*, 639 F. Supp. 3d 135, 141 (D.D.C. 2022) (considering on a motion to dismiss a contractual limitations provision in a contract to determine that it barred the claims because the complaint relied on one portion of the policy and "incorporated by reference the entire policy").[3]

I.    **The Court Should Dismiss Count I Because it Fails to Allege a RICO Claim and is Time-Barred.**

    A.    **Count I Alleges a Business Dispute and Unrelated Actions Regarding Covid Relief Funds, None of Which Are Cognizable Under RICO.**

RICO is inapplicable to business disputes like this case. Congress enacted RICO to "seek the eradication of organized crime in the United States," not to federalize "ordinary business disputes." *Adler*, 496 F. Supp. 3d at 278–79 (internal citations omitted). To state a RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern of continuous and related acts (4) of racketeering activity. *W. Assocs. Ltd. P'ship*, 235 F.3d at 633. When, as here, RICO claims are premised on wire fraud, those claims "must be particularly scrutinized because

---

[3]    Accordingly, because the Plaintiff references multiple documents in his Complaint to support its claims, the Court should consider the following documents when determining the motion to dismiss: **Exhibit A** (8/20/20 GSG Valuation) (referred to in Compl. ¶¶ 59, 115, 169); **Exhibit B** (Sixth Operating Agreement) (basis for indemnification referenced in Compl. ¶ 87); **Exhibit C** (12/23 Suarez-Haft e-mails) (referred to in Compl. ¶ 87); **Exhibit D** (Fifth Am. Operating Agreement) (referred to in Compl. ¶¶ 9, 11, 15, 101–07, 112, 116, 176–80, 182–84, 187–88); **Exhibit E** (Tolling Agreement) (referred to in detail in Compl. ¶ 128).

of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Id.* at 637 (internal citation and quotation omitted).

Courts in this District have dismissed purported RICO claims such as this, where litigants attempt to apply it to a business dispute among former partners. *See, e.g.*, *Adler*, 496 F. Supp. 3d at 280–81 (dismissing under Rule 12(b)(6) plaintiffs-business partners' RICO claim alleging a scheme to take plaintiff's "business away from him" because "this [was] an ordinary business dispute outside the reach of the RICO statute"); *Bridges v. Lezell L., PC*, 842 F. Supp. 2d 261, 265–66 (D.D.C. 2012) (dismissing investor's RICO claim alleging a scheme to fraudulently induce plaintiff to invest money without returning it).

Courts dismiss these cases because they do not plausibly allege a pattern of continuous, related <u>criminal</u> activity harming <u>multiple individuals</u>. *See Adler*, 496 F. Supp. 3d at 280–81 (dismissing RICO claim under Rule 12(b)(6) because plaintiffs failed to establish a "pattern of racketeering activity" because the alleged predicate acts constituted a single scheme to steal a business, the complaint only alleged two victims, and predicate acts threatened no future criminal conduct); *Bridges*, 842 F. Supp. 2d at 265–66 (dismissing RICO claim because plaintiff failed to establish a "pattern of racketeering activity" as there was only a single scheme with single injury to single specified victim with no threat of continued activity). A corollary to these holdings is that a plaintiff must plead more than a single scheme, a single injury, and a single (or few) victim(s), to state a RICO claim. *See, e.g.*, *W. Assocs. Ltd. P'ship*, 235 F.3d at 633–36 (dismissing RICO claim because the alleged conduct was a single effort to diminish the value of limited partnership's interest in project, all four alleged schemes involved contested bookkeeping entries, and alleged schemes resulted in single harm to a single set of victims); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 12–13 (D.D.C. 2014) (dismissing RICO claim because the plaintiff

only pleaded a "single scheme (to wrest control of the Property from the plaintiff); a single injury (the plaintiff's financial losses purportedly stemming from the litigation involving the Property); and a single victim (the plaintiff)" with a single discrete goal to "obtain control of the Property from the plaintiff at a low price"), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015).

Plaintiff's allegations comprising Count I constitute a classic example of allegations that cannot constitute a RICO claim: an alleged scheme that one business partner and his father are taking advantage of another business partner, refusing to pay him for his fair share of the business, and making him incur unnecessary legal fees on a lease dispute. We begin with the alleged "Ownership Concealment Scheme."

The allegations here state only a single scheme and injury—allegedly misleading Plaintiff by failing to reveal the ownership of business entities—where the only alleged victim was Plaintiff. Plaintiff alleges a business dispute among Messrs. Haft on the one hand and Plaintiff on the other, under which the Hafts allegedly "concealed the fact of Michael's majority ownership of Compass and perpetuated the false representation that Michael and Harrison were equal partners" to manipulate Harrison "into relinquishing ownership and authority in Compass." *See, e.g.,* Compl. ¶¶ 44, 61. Like in *Papageorge*, in which the plaintiff alleged a single scheme and discrete goal to obtain control of a property from the plaintiff, 31 F. Supp. 3d at 12–13, Plaintiff here alleged a single scheme and discrete goal to manipulate Plaintiff "into relinquishing ownership and authority in Compass," Compl. ¶ 61. Additionally, like in *Adler* and *Bridges*, in which the plaintiffs alleged schemes with no threat of future, continued criminal activity, *see Adler*, 496 F. Supp. 3d at 280–81; *Bridges*, 842 F. Supp. 2d at 265–66, there is no threat of future, continued criminal activity here because the alleged scheme to manipulate Plaintiff into relinquishing ownership is complete. Compl. ¶¶ 61, 97–98. Accordingly, Plaintiff fails to adequately plead a "pattern of racketeering."

12

*Papageorge*, 31 F. Supp. 3d at 12–13; *Adler*, 496 F. Supp. 3d at 280–81; *Bridges*, 842 F. Supp. 2d at 265–66.

Plaintiff, knowing this weakness to his claim, alleges an unrelated "Covid Relief Scheme," which allegedly constitutes a separate fraud on the government. Compl. ¶ 77. While Defendants were allegedly committing this fraud on the government, Plaintiff alleges, without specifying when, that Compass Coffee refused to indemnify Plaintiff for "thousands of dollars in attorneys' fees" defending a landlord-tenant dispute that Compass settled. *Id.* ¶ 87.

But to constitute a pattern of racketeering, the alleged activities must be both continuous and related. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989) (announcing a "relatedness" test for RICO claims that requires criminal acts to "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events"); *Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 56 (D.D.C. 2012) (dismissing RICO claims in part because "they are not related for they are dissimilar, undertaken by different individuals, for entirely distinct reasons, and through different methods"), *aff'd*, 553 F. App'x 1 (D.C. Cir. 2014).

This Court's decision in *Robertson* is instructive because it held that unrelated predicate acts do not form a pattern of racketeering. *See Robertson*, 867 F. Supp. 2d at 55. There, the plaintiff alleged defendants committed a hodge-podge of predicate acts, including immigration and tax fraud, extorting plaintiff and an unnamed Serbian businessman, and defaming plaintiff. *Id.* at 54. The defendants moved to dismiss. *Id.* at 42. The court granted the motion, holding that the alleged acts were unrelated. *Id.* at 55–56. The court reasoned that the acts were not related because they were undertaken for entirely different reasons and through different methods. *Id.* at 56. The reason for immigration fraud was to obtain a green card, the reason for tax fraud was to not pay

taxes on assets, the reason for extorting plaintiff was to prevent plaintiff from reporting immigration fraud, the reason for extorting the Serbian businessman was to coerce him into transferring assets to a charity, and the reason for defamation was retaliation for unfavorable testimony. *Id.* at 53 n.45; Compl. ¶¶ 48, 54, 58, 89, *Robertson v. Cartinhour*, 867 F. Supp. 2d 37 (D.D.C. 2012) (No. 11-1919 (ESH)). The method of the immigration fraud was false statements made in a visa application, the method of the tax fraud was failing to report the transfer of funds from the United States to Serbia, the method of the extortion was through threats, and the method of defamation was through false statements made to an attorney and landlord. *Robertson*, 867 F. Supp. 2d at 54, 55; Compl. ¶¶ 54, 58, 77, *Robertson v. Cartinhour*, 867 F. Supp. 2d 37 (D.D.C. 2012) (No. 11-1919 (ESH)).

Additionally, the Sixth Circuit's decision in *Aces High Coal Sales* is also instructive because it affirmed the district court's holding that a fraudulent contract scheme and fraudulent loan scheme, like the Ownership Concealment Scheme and Covid Relief Scheme alleged here, were unrelated. *See Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 454–55 (6th Cir. 2019). There, plaintiffs asserted multiple schemes, such as a "contract" scheme in which defendants allegedly defrauded a customer by mixing into coal deliveries low-quality coal by-product. *Id.* at 450. Plaintiffs also alleged a "loan" scheme in which defendants defrauded a bank by obtaining a loan without disclosing to the bank that defendants were about to lose their contracts with the customer because of the low-quality deliveries. *Id.* The Sixth Circuit affirmed the district court's holding that the schemes were unrelated because there were different purposes, results, victims, and methods of commission pursuant to the *H.J. Inc.* test. *Id.* at 455.

The court reasoned that the purpose of the "contract" scheme was to cheat on the contract with the customer by using a cheaper, low-quality coal by-product. *Id.* The result of the "contract"

14

scheme was the customer terminating the coal delivery contract with the defendants. *Id.* The victim was the customer. *Id.* The methods of commission were false statements about the quality of the coal under the customer's contract. *Id.* By contrast, the purpose of the "loan" scheme was to obtain a loan for which the defendants were unqualified. *Id.* at 450. The result of the "loan" scheme was securing a loan from the bank. *Id.* The victim was the bank. *Id.* at 455. The methods of commission were false or misleading statements in the loan application process. *Id.*

Like in *Robertson* and *Aces High Coal Sales*, Plaintiff's alleged predicate acts of wire fraud based on the Ownership Concealment Scheme and the Covid Relief Scheme are unrelated because they do not have similar purposes, results/damages, victims, or methods of commission. The purpose of the Ownership Concealment Scheme is to defraud Plaintiff into "relinquishing ownership and authority in Compass." Compl. ¶ 61. Conversely, the purpose of the Covid Relief Scheme is to divert "Covid relief funds for impermissible uses and personal gain." *Id.* ¶ 77.

Although Plaintiff alleges that there is a common purpose between the Ownership Concealment Scheme and the Covid Relief Scheme—namely, a desire by the defendants to enrich themselves at others' expense, *see id.* ¶ 164—that is insufficient to state a claim under RICO. Simply stating that unrelated acts are related because they financially benefit the alleged perpetrator would make any actions related to the point of meaninglessness. Such a broad characterization of a common purpose was rejected by the Second Circuit in *Reich v. Lopez*. *See* 858 F.3d 55, 62 (2d Cir. 2017) ("In a very broad sense, however, the "'purpose" of both crimes was to help [the defendant-company]. But to engage purpose at that level of generality would make the factor meaningless: virtually all crimes committed on behalf of an enterprise are done to help it."). Similarly, in *Aces High Coal Sales*, the alleged predicate acts also benefited the defendants at others' expense, but the court nonetheless rejected that there was a common

15

purpose. *See* 768 F. App'x at 455. If the desire to maximize profits were sufficient to establish a common purpose, the exception would swallow the rule because virtually all business actions are intended to confer a benefit on the actor, such as maximizing profits.

Additionally, the results of the two alleged schemes are different because the result of the Ownership Concealment Scheme is defrauding Plaintiff of his share in the Compass Business while the result of the Covid Relief Scheme is appropriating Covid relief funding for personal gain. Compl. ¶ 141. Plaintiff also alleges that, at some point in time, the Covid Relief Scheme resulted in Compass refusing to indemnify Plaintiff for defense costs in a landlord-dispute. *Id.* ¶ 87. The victims are different because the alleged victim in the Ownership Concealment Scheme is Plaintiff while the alleged victim in the Covid Relief Scheme is the Small Business Administration, which administered a popular Covid-relief lending program. *Id.* ¶ 164. Just as in *Aces High Coal Sales*, in which the victim of the "contract" scheme was the other party to the coal delivery contract and the victim of the "loan" scheme was the loan provider, 768 F. App'x at 455, the victim of the Ownership Concealment Scheme here is the other party to the Compass Coffee Operating Agreement and the victim of the Covid Relief Scheme is the government loan provider SBA, Compl. ¶ 164. The methods of commission are also different because the methods in the Ownership Concealment Scheme are the e-mails, phone calls, and conversations in which Defendants misrepresented the true ownership of Compass Coffee. Compl. ¶ 155. Conversely, the methods in the Covid Relief Scheme are the alleged false statements made on the loan applications submitted to the SBA. *Id.* ¶ 156. The difference in methods here—alleged false statements made to the other party to the Operating Agreement versus alleged false statements made on the loan applications to the loan provider—are like the methods held to be unrelated in *Aces High Coal Sales*—false statements made to the other party to the coal delivery contract versus

false statements made in the loan application process to the loan provider. 768 F. App'x at 455. Accordingly, Plaintiff's alleged Ownership Concealment Scheme and Covid Relief Scheme are unrelated because they do not have similar purposes, results, victims, or methods of commission and, therefore, Plaintiff fails to adequately plead a "pattern of racketeering." *Id.*; *Robertson*, 867 F. Supp. 2d at 55.

**B.    Even if Count I Alleges a RICO Claim, the Count is Time-Barred Based on the Complaint.**

Dismissal of claims on a Rule 12(b)(6) motion is warranted when, as here, the claim is time-barred by the statute of limitations on the face of the complaint. *Solano v. Delmed, Inc.*, 759 F. Supp. 847, 855 (D.D.C. 1991). The statute of limitations for a civil RICO claim is four years. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). A RICO claim accrues when the plaintiff knew or should have known of the conduct constituting the violation. *See Rotella v. Wood*, 528 U.S. 549, 554 (2000); *Solano*, 759 F. Supp. at 852 (stating that RICO's four-year statute of limitations begins to run on the date that a plaintiff "discover[ed], or should have discovered through the exercise of reasonable diligence, the fraudulent activity in question." (internal citation omitted)).

This Court's decision in *Solano* is instructive. There, the plaintiffs sold their business in exchange for shares of common stock of the purchasing company. 759 F. Supp. at 850–51. Plaintiffs, "in the posture of being disgruntled investors," sued the purchaser-defendants under RICO. *Id.* at 851, 854. Defendants moved to dismiss, arguing that the RICO claim was outside of the four-year statute of limitations. *Id.* at 848, 852. The court granted the motion, holding that the RICO claim was time-barred. *Id.* at 855. The court reasoned that plaintiff had sufficient notice of their RICO claim when they received "evidence [in the form of reports filed with the Securities and Exchange Commission] that defendants had made misrepresentations and omitted material

17

information" that, at the very least, "should have led [plaintiffs], through the exercise of due diligence, to make further inquiries." *Id.* at 854. Furthermore, the court concluded that the defendants' alleged fraudulent concealment did not toll the statute of limitations because "it [was] clear from the face of the complaint" that it was time-barred because "plaintiffs received several reports, filed with the SEC as required by law, which indicated that the company was in a far different state financially than plaintiffs allege that defendants had indicated." *Id.* at 855.

Here, more than four years has elapsed since Plaintiff knew or should have known of the schemes he complains of. Plaintiff alleges that the Hafts "deceived [him] into believing that he and Michael [Haft] were equal partners in Compass," when "they were not" and that "Michael [Haft] secretly owned a larger share of the business from the very beginning, concealing his ownership interest behind a web of LLCs." Compl. ¶ 5. That "web" of LLCs originates from "Colby Bartlett LLC," which was a 50% owner of Compass Coffee. *Id.* ¶ 41. Plaintiff alleges that Michael Haft owned a majority of Colby Bartlett, so Michael Haft therefore owned a "significantly larger share of Compass from the very beginning of the business—a fact Michael and Robert [Haft] actively concealed from [Plaintiff] for years." *Id.* ¶ 42. Plaintiff goes on to allege that on May 7, 2015, Robert Haft "emailed Michael [Haft] and [Plaintiff] to report that Colby Bartlett had transferred its 50% interest in Compass to Octa LLC." *Id.* ¶ 43.[4] Plaintiff alleges that Octa is 100% owned by Michael Haft. *Id.* Plaintiff alleges that this transfer from Colby Bartlett to Octa perpetuated Michael Haft's majority ownership position, while Plaintiff was led to believe that he was an "equal partner" with Michael Haft. *Id.* ¶ 44.

---

[4]    Plaintiff further confirms that Colby Barlett LLC transferred its interest to Octa. Compl. ¶ 49 n.3.

But critically, Plaintiff admits he knew about the quantum of ownership between himself and Michael Haft more than four years before filing suit.  Plaintiff admits that in September 2018, more than six years before he filed suit in 2025, he "inadvertently <u>discovered</u> Octa's true ownership while reviewing documents in the process of Compass seeking a loan."  *Id.* ¶ 60 (emphasis added). Plaintiff further admits that on September 22, 2018, also more than six years before filing suit, Plaintiff confronted Michael Haft about this discovery and that Michael admitted "that he had concealed [Octa's true ownership], stating that he did so at the direction of his father."  *Id.* Plaintiff's admission of his 2018 discovery of the "true" ownership of Compass demonstrates that Plaintiff had even more knowledge of the alleged scheme than the knowledge of the *Solano* plaintiffs held to be sufficient.  759 F. Supp. at 855.  In *Solano*, the plaintiffs were in possession of several reports indicating that the company was in a far different state financially than defendants had indicated but never admitted actual discovery of the scheme.  *Id.*  Here, based on the face of the complaint, Plaintiff knew of the conduct constituting the violation for more than four years, and the RICO claim therefore is time-barred.  *Id.*

Plaintiff contends that his claim is not time-barred because he did not learn the full truth about Colby Bartlett's ownership and that Michael Haft "secretly had a larger share of the business since day one" until 2022.  Compl. ¶¶ 61, 63.  But these allegations cannot save Plaintiff's claim. Plaintiff admits in his Complaint that he had access to Colby Bartlett's certificate of formation, which disclosed its true ownership, in March 2020.  *Id.* ¶ 63.  Plaintiff's access to documents and information that would have led him, through the exercise of due diligence, to make further inquiries into the alleged conduct is sufficient to satisfy at least the "should have known" accrual standard.  *See, e.g.*, *Solano*, 759 F. Supp. at 854 (stating that plaintiffs had sufficient notice of their RICO claim when they received "evidence that defendants had made misrepresentations and

omitted material information" that, at the very least, "should have led [plaintiffs], through the exercise of due diligence, to make further inquiries").

Additionally, Plaintiff, as a member-manager and co-owner, had an obligation to remain reasonably informed of Compass's operations, such as being aware of the identity of the other co-owners. *Comm. to Def. U.S. Const. v. Moon*, 776 F. Supp. 568, 575 (D.D.C. 1991) (holding that a corporation's director knew or should have known of the corporation's expenditures underlying the RICO claim because he had an obligation to remain reasonably informed of the corporation's operations). Plaintiff does not allege that he ever asked Defendants about the identities of the LLCs that were owners in Compass, their ownership, or the allegedly false information that they provided. Plaintiff also does not allege that he asked to see the co-owners' formation documents or that Defendants refused to show them. To the contrary, Plaintiff admits that Defendant Michael Haft uploaded Colby Bartlett's certificate of formation to Compass's shared drive, to which he had access, in 2020. Compl. ¶ 63. Like in *Moon*, Plaintiff's neglect as an owner to stay informed of Compass's operations does not affect the applicable statute of limitations. 776 F. Supp. at 575. Moreover, as a matter of law, Plaintiff's claims that he did not learn the full truth of Compass Coffee's ownership until 2022 does not make the claim timely. *See Chalabi v. Hashemite Kingdom of Jordan*, 503 F. Supp. 2d 267, 274 (D.D.C. 2007) (holding that a RICO claim was time-barred, despite plaintiff not knowing of the scope of the alleged fraud at the time of discovery, because "when a cause of action accrues upon plaintiff's discovery of his injury, it is inconsequential that he did not then know the full extent or duration of the injury"), *aff'd*, 543 F.3d 725 (D.C. Cir. 2008).

Furthermore, the tolling agreement that Plaintiff references in his Complaint does not save the RICO claim. Plaintiff alleges that "Harrison and Michael executed a tolling agreement that

tolled the statutes of limitations for any and all rights or claims that had not expired as of July 19, 2021 for the period from July 19, 2021 through July 31, 2024." Compl. ¶ 128. That interpretation of the agreement is plainly incorrect. Instead, the tolling agreement states that the statute of limitations for any claims by the Parties – which are Plaintiff, Michael Haft, and Compass Coffee LLC (but not Robert Haft) – that "have not expired as of July 19, 2021 shall be tolled, with such tolling commencing upon the Effective Date [January 31, 2024] and ending on the Termination Date [July 31, 2024]." **Exhibit E** at 1–2. Therefore, the claims were only tolled against Michael Haft for 182 days (six months) from January 31, 2024 to July 31, 2024. *Id.* The six-month toll does not place Plaintiff's over six-year-old claim within the four-year statute of limitations.

And, even if the tolling agreement saves the RICO claim (it does not), Defendant Robert Haft was not a party to that agreement and, therefore, the RICO claim is time-barred against him. *See, e.g.*, *Guttenberg v. Emery*, 41 F. Supp. 3d 61, 68 (D.D.C. 2014) (stating that an arbitration agreement cannot be enforced against a non-party); *Ebling v. U.S. Dep't of Just.*, 796 F. Supp. 2d 52, 63 (D.D.C. 2011) ( "It is a fundamental and unobjectionable principle that a contract cannot bind a non-party—*i.e.,* someone who has not assented to be bound to its terms."). By the tolling agreement's plain language, the only parties are Harrison Suarez, Michael Haft, and Compass Coffee. **Exhibit E** at 1.

### C.    Even if Count I Alleges a RICO Claim, Plaintiff has no standing to sue over the "Covid-Relief Scheme" and Because the Hafts Caused Him No Injury.

A plaintiff bringing a RICO claim must have standing to sue for all of the predicate acts he alleges. *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 100 (D.D.C. 2003) (citing 18 U.S.C. § 1964(c)). Standing requires the plaintiff to show he has an "injury in fact" that is "concrete and particularized," that was caused by the defendant's conduct, and that would be redressable by a ruling in the plaintiff's favor. *Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 513

(D.C. Cir. 2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Generalized grievances "shared in substantially equal measure by all or a large class of citizens" do not confer standing. *Am. Trucking Ass'ns, Inc. v. Dep't of Transp.*, 492 F. Supp. 566, 570 (D.D.C. 1980) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Standing for a RICO Act violation in particular requires the plaintiff to allege that "(1) he suffered an injury to his business or property and that (2) defendant's RICO predicate acts were the cause of the injury." *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 268–69 (D.D.C. 2011). To satisfy the second element, causation, plaintiff must show that the defendant's violation was both a "but for" and proximate cause of plaintiff's injury. *See Holmes v. Sec. Invs. Prot. Corp.*, 503 U.S. 258, 268 (1992). Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged." *Id.* Therefore, a "link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Grp., LLC v. City of New York,* 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271, 274).

The court's decision in *Greenpeace* shows that when the "distance between the [predicate] scheme" and the defendant's alleged harms is "too great," the defendant's injury is too attenuated, and no standing exists. 802 F. Supp. 2d at 274. There, Greenpeace brought a RICO claim based on allegations that the defendants committed wire fraud when they infiltrated "CLEAN," a third-party organization, to obtain information that they later distributed interstate. *Id.* at 272. Greenpeace alleged it suffered injury when the distribution of that information interfered with its own environmental campaigns. *Id.*

The court held that the injuries could not confer standing. *Id.* at 274. The injuries were too attenuated from the alleged misconduct "because the direct victim of Defendants' alleged actions was [CLEAN]" and not Greenpeace itself. *Id.* at 272, 274 ("Greenpeace faces an

insurmountable hurdle arising from the requirement of proximate cause[.]").    Greenpeace's relationship to the alleged misconduct was so indirect that "any injuries suffered by Greenpeace because of Defendants' wire fraud" were "speculative at best." *Id.* at 273.    As the court noted, the success or failure of Greenpeace's campaigns "could have been caused by any number of pressure points" beyond the alleged theft of information from CLEAN.    *Id.* at 274.    Accordingly, Greenpeace lacked standing to bring RICO claims based on the alleged wire fraud.    *Id.*

Here, Plaintiff lacks standing to pursue the Covid Relief Scheme as part of his RICO claim. Plaintiff alleges that the Defendants effected the scheme when Compass Coffee obtained several loans and grants from the federal government that were meant for limited uses (*e.g.*, paying rent, payroll, and other operating expenses) and then misused those funds to prepay debt owed to the Hafts and make investments in Union Kitchen and bitcoin.  Compl.  ¶¶ 7, 68–71, 76–80.  Plaintiff alleges that he was injured when Compass Coffee failed to pay rent on one of its leases, Compass' landlord sued, Compass settled the case, but after the case was settled Compass refused to indemnify Plaintiff for his defense costs, which cost him "thousands of dollars." *Id.* ¶ 87.

This is exactly the type of remote injury that does not confer standing.  Plaintiff attempts to graft his own injury onto alleged fraud against the federal government, but the injury and misconduct here are unrelated and attenuated.  Like in *Greenpeace*, 808 F. Supp. 2d at 273, the "direct victim" of the alleged Covid Relief Scheme is not Plaintiff—it is a third party, the SBA. Plaintiff never alleges that he was a victim the alleged Covid Relief Scheme.  Plaintiff never alleges that he suffered harm because of the Scheme.  Instead, Plaintiff contends that if Compass had properly used the SBA funds, it would have had sufficient cash, Compass would have paid its rent, the landlord would never have sued Compass and its guarantors (including Michael Haft and Plaintiff), and Compass would have never refused to indemnify Plaintiff for his defense costs.

Compl. ¶¶ 87, 165.  That chain of causation puts too great of a distance between the alleged misconduct and injuries.  *See Greenpeace*, 808 F. Supp. 2d at 274.  Like in *Greenpeace*, litigation over Compass's lease "could have been caused by any number of pressure points" beyond alleged misuse of Covid funds, such as Covid itself and Covid's financial devastation on the food and beverage industry, which is well-known.  *Id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458–59 (2006) (industrial supplier could not maintain RICO claim based on its competitor's alleged tax fraud because although the competitor's tax savings allegedly caused plaintiff to lose market share, that harm could have occurred for any number of reasons unrelated to the fraud).

Further, the only connection that Plaintiff alleges between the scheme and his injury—the allegation that <u>Compass</u> failed to reimburse him legal fees as required by the Compass Coffee Operating Agreement—boils down to a business dispute, not a RICO claim.  *See Adler*, 496 F. Supp. 3d at 279, 281 ("ordinary business dispute[s]" are "outside the reach of the RICO statute"). Plaintiff never alleges that Robert Haft was involved in Compass' refusal to indemnify Plaintiff for his defense costs.  Plaintiff only alleges that Michael Haft was acting as the Chief Financial Officer of Compass at the time, Compl. ¶ 65, not that Michael Haft caused Plaintiff's injury. Instead, Plaintiff alleges that he was injured when <u>Compass</u> was required to indemnify the legal fees Plaintiff incurred in connection with the landlord/tenant suit but did not do so.  *Id.* ¶ 87.  That is a dispute over <u>Compass'</u> obligations under Compass's operating agreement, not an allegation of wire fraud or other racketeering conduct covered by RICO.  *See* **Exhibit B** at 23–24.

Moreover, Plaintiff has pleaded himself out of Court by making this failure-to-indemnify allegation.  As the Compass Operating Agreement makes clear, Compass's obligation to indemnify attorneys' fees is only triggered "upon receipt of an undertaking by or on behalf of" Plaintiff.  *Id.*

at 24.[5]  Plaintiff never alleges that he provided the proper undertaking because, in fact, he did not. Indeed, attached to this Motion is the very communication that Plaintiff references in paragraph 87 of the Complaint.  The communication shows that Plaintiff never provided the undertaking, despite multiple requests from Michael Haft.  *See* Compl. ¶ 87; **Exhibit C**.  And in any event, indemnification is an obligation of Compass only, and not Robert or Michael Haft.  *See* **Exhibit B** at 1, 23–24 (describing the obligation of the "Company," defined as Compass Coffee LLC). Thus, any claims against the Hafts arising from this alleged injury must be dismissed.

Without a sufficient injury arising from Plaintiff's outlay of attorneys' fees, the Covid Relief Scheme is a dressed-up allegation that the Defendants misused public funding.  That is a generalized grievance that cannot confer standing.  *See Am. Trucking Ass'ns, Inc.*, 492 F. Supp. at 570 (generalized grievances shared by the citizenry do not confer standing);  *Hueter v. Kruse*, No. 1:20-cv-03686 (TNM), 2022 WL 823066, at *3 (D.D.C. Mar. 18, 2022) (dismissing plaintiff's "claims about misuse of COVID relief funds" for lack of standing because they amounted to "a generalized grievance" for which plaintiff alleged no injury to his own interest); *Swomley v. Watt*, 526 F. Supp. 1271, 1272, 1275 (D.D.C. 1981) (dismissing claim that alleged misuse of government funds and land because plaintiffs failed to show more than generalized grievances).

## II.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the Rest of the Counts.

### A.    Count II is Not Pled with Particularity and is Time-Barred Based on the Documents Plaintiff Cites.

#### 1.    Plaintiff's fraud claim lacks the particularity required by Rule 9(b).

Courts properly dismiss fraud claims that, like the fraud claim here, fail to plead all necessary elements with the particularity required by Federal Rule of Civil Procedure 9(b).  A

---

[5]    An "undertaking" is a formal promise to repay money provided for defense costs if a court ever determines that there was no duty to provide defense costs in the first place.

plaintiff bringing a fraud claim must plead the "essential elements" of "(1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action [that] is taken in reliance upon the representation." *Lee v. Bos*, 874 F. Supp. 2d 3, 6 (D.D.C. 2012) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977)). These allegations must be pled "with particularity," commonly referred to as the "who, what, when, where, and how" of the alleged fraud. *Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 35–36 (D.D.C. 2008). When the plaintiff brings a fraud claim against multiple defendants, he must plead "specific and separate allegations of fraud" against each defendant. *Id.* at 37.

A handful of specific allegations do not salvage a fraud claim that fails to allege what the plaintiff was promised and why those promises were fraudulent. *Poblete v. Rittenhouse Mort. Brokers*, 675 F. Supp. 2d 130, 135–36 (D.D.C. 2009). In *Poblete*, the plaintiff alleged that his mortgage broker and lenders defrauded him by making a loan for which he did not qualify, misrepresenting the loan's interest rate, and failing to pay taxes they were obligated to pay. *Id.* at 132–33, 135. The court dismissed the fraud claim against all parties because the complaint did not meet the particularity required by Rule 9(b). *Id.* at 135, 137 n.5. Although the complaint included "a few specific allegations" about the loan and the taxes that the defendants failed to pay, it "allege[d] no specific fraudulent conduct" on the defendants' behalf. *Id.* at 135. Plaintiff did "not identify what, specifically, [the plaintiff] was promised and how those promises were fraudulent." *Id.* at 136.

Here, Plaintiff fails to allege his fraud claim with the required particularity. In Count II, Plaintiff alleges that he was defrauded into "relinquishing [Plaintiff's] 50% ownership of the Compass brand intellectual property." Compl. ¶ 168. Plaintiff alleges that he owned a 50% interest in HaftSuarez LLC, that HaftSuarez owned the Compass Coffee "brand," and that on

August 2, 2018, HaftSuarez assigned "ownership of the Compass brand to Compass LLC for free." *Id.* ¶¶ 59, 170. Plaintiff alleges that he only assigned his ownership interest in HaftSuarez, and that HaftSuarez in turn only assigned the brand to Compass, because Plaintiff was misled into believing that "he and Michael [Haft] would continue to be equal owners of the brand post-transfer," and that the Hafts "misrepresented" to him that he "was an equal partner to Michael and that they had his best interests at heart." *Id.* ¶ 59. Plaintiff argues that he was damaged by these "misrepresentations" because the "Haft family accountant [later] valued the brand at $34 million." *Id.* ¶ 169. Plaintiff cites no documents in support of his allegations, such as an assignment of a "brand." Plaintiff also cites no public filings in support of his allegations, such as any documents establishing that HaftSuarez owned any intellectual property, such as a trademark for the Compass Coffee brand.

Plaintiff also never pleads any material misrepresentations that allegedly induced HaftSuarez to assign the brand to Compass. Absent from the Complaint are the "who, what, when, where, and how" of the representations that allegedly caused that assignment. *See* Compl. ¶ 59; *Antoine*, 547 F. Supp. 2d at 38. Plaintiff also does not allege how Michael Haft's "secret" ownership stake harmed him, because he does not allege that Michael's ownership led him to extract Compass funds or dividends, or influence board votes in his own favor at Plaintiff's expense. Like in *Poblete*, Plaintiff fails to "identify what, specifically, he was promised" in connection with the assignment of the brand or "how those promises were fraudulent." 675 F. Supp. 2d at 136. Accordingly, the claim should be dismissed under Rule 9(b).

### 2.    Even if Plaintiff's fraud claim is sufficiently pleaded, the claim is time-barred based on the Complaint and the documents Plaintiff cites.

The Court may dismiss claims barred by the statute of limitations on a Rule 12(b)(6) motion when the facts are apparent on the face of the complaint that the "relevant statute of limitations

bars the action." *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F. Supp. 2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint."). In this case, Plaintiff's common law claim for fraud (Count II) is subject to a three-year statute of limitations. *See* D.C. Code §12-301(8). A cause of action for fraud accrues when the plaintiff "knows or through the exercise of due diligence should have known the fraud occurred." *Ling Yuan Hu v. George Washington Univ.*, 766 F. Supp. 2d 236, 241 (D.D.C. 2011); *see King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978) (actions for fraud "must be brought within three years from the time the fraud either is discovered or reasonably should have been discovered").

Here, the claim is time barred, as shown by documents referenced in the Complaint. Plaintiff claims that he was damaged because the brand was valued to be worth $34 million. Compl. ¶¶ 59, 169. But the valuation to which Plaintiff cites was issued to Plaintiff on August 20, 2020. **Exhibit A** at 1 & *Exhibit 1* (valuing Compass Coffee's goodwill at $34,110,724). The cause of action for alleged fraud therefore accrued no later than that date, when Plaintiff learned that he was allegedly damaged by the transfer of the "brand" based on its value. *See Ling Yuan Hu*, 766 F. Supp. 2d at 241–42 (fraud claim based on university's failure to award credits for transferred classes accrued when plaintiff learned that the university would not award the credits). August 20, 2020, is 4 years and 146 days before the date on which Plaintiff filed his Complaint. Although Plaintiff contends that the parties' Tolling Agreement preserves the claim, the claim is still barred based on the Tolling Agreement that Plaintiff cites. As explained in section I.B, above, the tolling agreement tolls the statute of limitations for 182 days. **Exhibit E** at 1–2 (defining the tolling period to run from the "Effective Date" of January 31, 2024, to the "Termination Date" of July 31, 2024).

Therefore, the agreement cannot preserve the fraud claim pleaded against Michael Haft and Compass because the claim is still 330 days too late. Accordingly, the Court should dismiss the claim as to Michael Haft and Compass. *See* D.C. Code §12-301(8); *Ling Yuan Hu*, 766 F. Supp. 2d at 241–42 (applying three-year statute of limitations to dismiss fraud claim under Rule 12(b)(6) when cause of action accrued more than four years before plaintiff filed suit).

Moreover, Robert Haft is <u>not</u> a party to the tolling agreement, so that claim against him is even more untimely. **Exhibit E** at 1; Compl. ¶ 128 (alleging that "Harrison and Michael executed a tolling agreement . . . ."). The limitations period for Plaintiff's fraud claim pleaded against Robert Haft expired on August 20, 2023—well before Plaintiff filed this action on January 13, 2025. Accordingly, the Court should dismiss the claim as to Robert Haft.

### B.    Count III Does Not State a Claim for Breach of Contract Against Robert Haft.

To state a claim for breach of contract under Delaware law, a plaintiff must allege "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[6] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). When

---

[6]    Under the Fifth Amended Operating Agreement, Plaintiff's claims for breach of contract (Count III), breach of the duty of good faith and fair dealing (Count IV), and breach of the fiduciary duty of loyalty and care (Count V) are governed by Delaware law. *See* **Exhibit D** at 32 ("This Agreement and the application or interpretation hereof shall be governed exclusively by the terms of the laws of the State of Delaware without effect to its conflicts of laws provisions."); *K St. Devs., LLC v. Tchrs. Ins. & Annuity Ass'n of Am.*, 69 F. Supp. 3d 45, 56–58 (D.D.C. 2014) (applying Delaware law to breach of contract, breach of covenant of good faith and fair dealing, and breach of fiduciary duty claims between parties to an LLC agreement because the "LLC Agreement [was] governed by Delaware law").

Even if the Court applied District of Columbia law to the breach of contract claim, the result would be the same, as the two jurisdictions use functionally identical elements for breach of contract claims. *See, e.g.*, *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1245 (D.C. 2024) ("Under District of Columbia law, a party asserting breach of contract must prove four elements: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'") (internal citation omitted).

the defendant owes no contractual obligation to the plaintiff, plaintiff cannot state a claim for breach. *See id.* at 141–42 (dismissing breach of contract claim based on memorandum that did not create contractual obligations); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").

In Count III, Plaintiff alleges that Robert Haft breached Section VI.10 of the Compass Coffee Fifth Amended Operating Agreement.  Compl. ¶¶ 175–85.  Plaintiff contends that Robert Haft did not "use reasonable best efforts to consummate the repurchase of [Plaintiff's] founders shares as contemplated by Section VI.10, refusing to repurchase his shares . . ., and not paying [Plaintiff] the Fair Market Value of his Units . . . ."  *Id.* ¶ 180.

But the Operating Agreement does not impose any contractual obligations on Robert Haft. Section VI instead obligates the Founders (Plaintiff and Michael Haft) to select a valuation firm, for Compass to pay for that valuation firm's work, and for the Company to pay the Founder who decides to consummate the repurchase of his Units of the Company.  **Exhibit D** at 2, 20 (defining "The Founders" to mean "Michael Haft and Harrison Suarez" and stating the payment allegations of "the Company," defined as Compass Coffee LLC).  Robert Haft has no such obligations. Accordingly, Count III fails to state a claim against Robert Haft, and the Court should dismiss Count III against him.

### C.    Count IV Does Not State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing.

In a redux of Count III, Plaintiff alleges in Count IV that Defendants breached the implied duty of good faith and fair dealing.  Plaintiff alleges, in conclusory fashion, that Defendants failed to "act in good faith to bring about the repurchase of [Plaintiff's] Units of Compass Coffee." Compl. ¶ 188.  But, in Plaintiff's zeal to multiply claims, he overlooks that "[g]eneral allegations

of bad faith conduct are not sufficient" to state a claim under Delaware law.[7]  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (dismissing implied duty claim because the "express terms of the contract will control such a claim").  Count IV must therefore be dismissed.

Furthermore, as an independent reason why Count IV must be dismissed, the "implied covenant does not apply when," as here, "the subject at issue is expressly covered by the contract." *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009) (internal citation omitted).  An implied covenant claim "operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."  *Id.*  "Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully."  *Kuroda*, 971 A.2d at 888.  Where, as here, the contract at issue expressly addresses a particular matter, like the Fifth Amended Operating Agreement, "an implied covenant claim respecting that matter is duplicative and not viable." *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. 2017-0500-JRS, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) (dismissing implied covenant claim as duplicative of breach of contract claim because the contract at issue expressly addressed claim); *Buck v. Viking Holding Mgmt. Co. LLC*, No. N20C-08-249 AML (CCLD), 2021 WL 673459, at *5 (Del. Super. Ct. Feb. 22, 2021) (same); *Stewart v. BF Bolthouse Holdco, LLC*, No. 8119-VCP, 2013 WL 5210220, at *16–17 (Del. Ch. Aug. 30, 2013) (same).

---

[7]    As discussed in *supra* note 6, Delaware law applies to this claim.  Even if the Court applied District of Columbia law, the result would be the same because, like in Delaware, "[a] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of action." *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 2002) (internal citations omitted); *Doe v. George Washington Univ.*, 366 F. Supp. 3d 1, 8 (D.D.C. 2018) (dismissing breach of the duty of good faith and fair dealing claim because it was duplicative of breach of contract claim); *Robinson v. Deutsche Bank Nat. Tr. Co.*, 932 F. Supp. 2d 95, 112 n.10 (D.D.C. 2013) (same).

The Superior Court of Delaware's decision in *Buck* shows that a breach of the implied duty of good faith and fair dealing claim is properly dismissed when, like here, it duplicates a breach of contract claim. 2021 WL 673459, at *5. There, the plaintiff was terminated from his employment with an LLC. *Id.* at *1. The LLC's membership agreement provided that the LLC could repurchase a member's units upon termination, with the repurchase price dependent on whether termination was with or without cause. *Id.* After the defendants characterized the plaintiff's termination as "for cause" and trigged a lower repurchase price, plaintiff alleged breach of contract and breach of the implied covenant of good faith and fair dealing claims, alleging that the defendants deprived him of his equity interest value calculated by a higher repurchase price. *Id.* at *1–2. The defendants moved to dismiss on the basis that the claims were duplicative. *Id.* at *3. The court granted the defendants' motion. *Id.* at *4–5. Although the plaintiff argued that defendants had ginned up a termination for cause and violated an implied covenant, the court disagreed, observing that plaintiff was merely alleging that defendants had breached the contract by failing to repurchase the plaintiff's units at the higher price. *Id.* at *5. Because the implied covenant claim "merely repackage[d] his breach of contract claim," it was "duplicative and must be dismissed." *Id.*

Like in *Buck*, Plaintiff alleges that Compass failed to correctly value his share of the company at fair market. *See* Compl. ¶ 116 ("[T]he Fifth Operating Agreement set forth a specific and detailed definition of Fair Market Value, which the Draft Report failed to follow."). Plaintiff even uses the same language to describe his implied duty claim as his breach of contract claim. Both claims are based on the same contract—the Fifth Amended Operating Agreement—and the same acts—the alleged failure to bring about the repurchase of Plaintiff's Units. *Compare id.* ¶ 180 (alleging that Defendants breached "the **Fifth Operating Agreement** by failing to use

**reasonable best efforts to consummate the repurchase of Harrison's founders shares**")
(emphasis added), *with id.* ¶¶ 188–89 (alleging that Defendants breached the duty of good faith
and fair dealing because they, "[b]y entering into the **Fifth Amended Operating Agreement,** []
impliedly covenanted that the Parties would act in good faith **to bring about the repurchase of
[Plaintiff's] Units**") (emphasis added).

Count IV therefore is duplicative with Count III and should be dismissed. The repurchase
of Plaintiff's units is expressly covered by Section VI.10.1 of the Fifth Operating Agreement and,
therefore, the "implied covenant does not apply." *Airborne Health*, 984 A.2d at 146. Put
differently, the Fifth Amended Operating Agreement exhausts what is required of the parties to
bring about the repurchase of Plaintiff's Units, and there is no silence for the implied covenant
doctrine to fill. *Id.* (holding that the implied covenant did not come into play because the contract
addresses the alleged issue). Accordingly, Count IV should be dismissed.

**D.    Count V Does Not State a Claim for Breach of the Duties of Loyalty and Care.**

Count V alleges a breach of fiduciary duty of loyalty and care under D.C. Code § 29-804.09
and common law. Compl. ¶¶ 192–97. However, Count V fails because Delaware, not District of
Columbia, law governs this claim. *See supra* note 6 (stating that the Fifth Amended Operating
Agreement contains a Delaware choice-of-law provision); *see also City of Harper Woods
Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1294 (D.C. Cir. 2009) (applying, under D.C.'s
internal affairs doctrine, the law of the state of incorporation to breaches of fiduciary duty claims);
D.C. Code § 29-105.01(a)(1) (providing that "the law of the jurisdiction of formation of an entity
shall govern the . . . [i]nternal affairs of the entity").

Even if Plaintiff invoked the correct jurisdiction's laws (which he does not), Count V
should still be dismissed. Because Count V is a re-packaging of Plaintiff's other claims, Count V

fails because it was not pleaded with particularity, and it is time-barred. Count V is also duplicative with other aspects of Plaintiff's claims and therefore is barred under Delaware law. And, finally, Plaintiff's claim is actually a derivative claim that he cannot pursue because it is held by Compass, not Plaintiff. Plaintiff alleges that Michael and Robert breached their fiduciaries duties of loyalty and care to Plaintiff when they (i) "failed to disclose material facts concerning Compass's true ownership"; (ii) "induced Harrison to assign away his 50% interest in Compass's brand for no consideration"; (iii) "refused to fairly value Harrison's share in the Company"; (iv) "refused to effectuate the repurchase of Harrison's Units at fair market value"; (v) "misused Covid relief funds without Harrison's knowledge"; and (vi) "engaged in other misconduct designed to enrich themselves at the expense of Harrison and Compass." Compl. ¶ 196. We address the alleged bases in turn.

As to the first and second alleged bases, a claim for breach of fiduciary duty based on fraud, however, must be pled with particularity. *See York Lingings v. Roach*, No. 16622-NC, 1999 WL 608850, at *1 (Del. Ch. July 28, 1999) (dismissing portion of counterclaim for breach of fiduciary duty based on alleged fraud because it was not pled with particularity). For the same reasons that the fraud claim cannot survive discussed in section II.A above, Plaintiff never pleads any misrepresentations that allegedly induced HaftSuarez to assign the "brand" to Compass. For the same reasons that the fraud claim is time-barred, the re-packaged breach of fiduciary duty allegations under the first and second bases are also time-barred under D.C. law.[8] *See* D.C. Code § 12-301(8); *Bartlett v. Overslaugh*, 169 F. Supp. 3d 99 (D.D.C. 2016) ("[C]laims of breach of

---

[8]    D.C. law applies to the statute of limitations of the breach of fiduciary duty claim. *B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*, 171 A.3d 140, 147 (Del. Ch. 2017) ("[C]hoice-of-law provisions in contracts do not apply to statutes of limitations, unless a provision expressly includes it. If no provision expressly includes it, then the law of the forum applies because the statute of limitations is a procedural matter.").

fiduciary duty. . . are subject to the catchall three-year limitations period found in D.C. Code §12-301(8).").  Accordingly, the first and second bases of the breach of fiduciary duty claim should be dismissed.

As to the third and fourth bases, Plaintiff's allegations that Michael and Robert breached their fiduciary duties by refusing "to fairly value Harrison's share in the Company" and "to effectuate the repurchase of Harrison's Units at fair market value," Compl. ¶ 196, fail to state a claim because "fiduciary claims arising out of the same facts that underlie the contract obligations" are "foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (affirming the dismissal of a breach of fiduciary duty claim involving the redemption of former officers' shares of the company, finding that the claim was foreclosed by a contract that expressly addressed the parties' dispute); *Ogus v. SportTechie, Inc.*, No. 2018-0869-AGB, 2020 WL 502996, at *11 (Del. Ch. Jan. 31, 2020) (holding that plaintiff's breach of fiduciary duty claim based on a failure to repurchase shares at a fair market value failed to state a claim because it was precisely the same as plaintiff's breach of contract claim).

Like in *Nemec*, the Fifth Amended Operating Agreement here expressly addresses the parties' dispute regarding the repurchase of Plaintiff's units.  *See supra* II.C (explaining that Section VI.10 of the Fifth Amended Operating Agreement exhausts what is required of the parties to bring about the repurchase of Plaintiff's Units).  Additionally, like in *Ogus*, Plaintiff's breach of fiduciary duty claim based on the refusal to repurchase shares at fair market value arises out of the same facts and contractual obligations of his breach of contract claim.  *Compare* Compl. ¶ 196 (alleging that Michael and Robert breached their fiduciary duties by refusing "to **fairly value Harrison's share in the Company**" and "**to effectuate the repurchase of Harrison's Units at fair market value**," *with id.* ¶ 180 (alleging that Defendants breached the Fifth Operating

35

Agreement by "**failing to use reasonable best efforts to consummate the repurchase of Harrison's founders share**s . . ., **refusing to repurchase his shares** . . ., and **not paying Harrison the Fair Market Value of his Units**").  Accordingly, Plaintiff fails to state a claim with respect to the third and fourth aspects of the breach of fiduciary duties claim.

As to the fifth basis, Plaintiff's allegation that Michael and Robert breached their fiduciary duties to Plaintiff by misusing "Covid relief funds without Harrison's knowledge" fails to state a claim.  Compl. ¶ 196.  As an initial matter, the allegation fails because Plaintiff pleads in conclusory terms that Michael and Robert used Covid relief funds, and not other available Compass funds, for the alleged transactions.  *See In re Est. of Chambers*, No. 2018-0630-SEM, 2019 WL 4110674, at *3 (Del. Ch. Aug. 29, 2019) (dismissing plaintiff's "conclusory" breach of fiduciary duty claim).  Plaintiff fails to consider that "money is fungible."  *In re Happy Child World, Inc.*, No. 3402-VCS, 2020 WL 5793156, at *19 (Del. Ch. Sept. 29, 2020).  It is equally if not more plausible that receiving the Covid relief funds freed up other company money, which in turn was permissibly used for the alleged transactions.  And Plaintiff does not and cannot allege that without the Covid relief funds, Compass would not or could not have made the payments at issue.  Therefore, Plaintiff failed to plead a plausible factual basis that Covid relief funds, and not other company funds, were used for the alleged transactions.

Additionally, this claim must be dismissed because, despite Plaintiff's attempt to pass off the claim as a direct suit that he is entitled to bring, the claim in actuality is a derivative claim that is held by Compass Coffee, not Plaintiff.[9]  Under Delaware law, the necessary prerequisite for a

---

[9]    A direct claim is brought on behalf of the shareholder to redress harms to themselves as shareholders (as opposed to the entity at large).  *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262–263 (Del. 2021).  In contrast, a derivative claim is brought by the shareholder on behalf of the entity to redress harms to the entity.  *Id.*

derivative claim, such as the one pleaded by Plaintiff here, is for Plaintiff to make a demand on the managers of the LLC, requesting that it bring the action on behalf of the LLC, then demonstrate that the demand was wrongfully refused by the managers, *or* for Plaintiff to plead that such a demand would be futile because a majority of mangers are incapable of making an impartial decision regarding such litigation. *Richardson ex rel. Richardson Living Tr. v. Clark*, No. 2019-1015-SG, 2020 WL 7861335, at *7 (Del. Ch. Dec. 31, 2020). Plaintiff fails to plead these requirements.

Whether a claim is direct or derivative "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004); *Clifford Paper, Inc. v. WPP Invs., LLC*, No. 2020-0448-JRS, 2021 WL 2211694, at *7 (Del. Ch. June 1, 2021) (applying the *Tooley* test to a two-member LLC). To prove that a claim is direct, Plaintiff "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039.

Plaintiff cannot make the requisite showing because where, as here, the fiduciary duty claim alleges a misappropriation of company funds for personal use, that claim is a "textbook derivative claim." *BET FRX LLC v. Myers*, 2019-0894-KSJM, 2022 WL 1236955, at *7 (Del. Ch. Apr. 27, 2022); *Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009). This is because "[w]hen a director engages in self-dealing or commits waste, he takes from the corporate treasury and any recovery would flow directly back into the corporate treasury. Any benefit to the stockholders would be limited to the indirect effect on their proportional ownership or share of the venture." *Thornton*, 2009 WL 426179, at *3.

Similarly, here, Plaintiff alleges a misappropriation of company funds.  Compl. ¶ 196.  To the extent that Plaintiff even alleges a harm, *see id.* ¶ 197 (stating in conclusory terms that the alleged breach "proximately caused injury to Harrison as pled herein"), the harm resulting from an alleged misuse of Compass funds would be to Compass generally.  If Compass funds were misused, it follows that Compass would receive the benefit of any resulting recovery, with Plaintiff benefiting from such opportunities derivatively, in proportion to his equity stake in Compass.

Moreover, Plaintiff's characterizations of the claim as direct do not save it.  *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992) (stating that a court must look to the "nature of the wrongs alleged in the body of plaintiffs' complaint, not plaintiffs' characterization"); *Clifford Paper, Inc.*, 2021 WL 2211694, at *8 ("When judging a plaintiff's claim against *Tooley*'s rubric, the court awards no style points for artful pleading.").  Here, Plaintiff pleads his breach of fiduciary duty claim based on misuse of Covid relief funds as a derivative claim.  Plaintiff states that "[m]embers of an LLC owe fiduciary duties to **both the LLC and to the other members**" and that Michael and Robert failed to act in a manner that they "reasonably believed to be in Harrison's and **Compass's best interests**."  Compl. ¶¶ 193–94 (emphasis added).  Plaintiff's Complaint and the nature of the allegation show that Plaintiff's claim is derivative.

Because Plaintiff's claim is derivative, the Delaware Limited Liability Act requires that Plaintiff allege in his Complaint pre-suit demand or demand futility.  Del. Code Ann. tit. 6, § 18-1003 (requiring that a complaint must "set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort").  Plaintiff fails to allege anything about a demand or demand futility in his Complaint.  Accordingly, Plaintiff's claim on this basis must be dismissed.  *See Clifford Paper, Inc.*, 2021 WL 2211694, at

*12 (dismissing plaintiff's "direct" breach of fiduciary duty claim because it was derivative, and plaintiff failed to plead pre-suit demand or demand futility).

As to the sixth basis, Plaintiff's catch-all allegation that Michael and Robert breached their fiduciary duties by engaging "in other misconduct designed to enrich themselves at the expense of Harrison and Compass" fails to state a claim because it is impermissibly vague. *See In re Est. of Chambers*, 2019 WL 4110674, at *3 (dismissing plaintiff's "conclusory" and "vague" breach of fiduciary duty claim). In this basis, Plaintiff does not specify with any detail what misconduct he is referring to. Even if Plaintiff stated a claim, Plaintiff's allegation of "other misconduct" that enriched Michael and Robert Haft at the expense of <u>Compass</u>, rather than Harrison, would be a derivative claim that must be dismissed. *Clifford Paper, Inc.*, 2021 WL 2211694, at *12.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts I of the Complaint and decline to assert jurisdiction over the state-law claims in Counts II through V. In the alternative, if the Court considers the state law claims, it should dismiss Counts II, IV, and V in their entirety and dismiss Count III as to Robert Haft.

Dated: March 18, 2025                    Respectfully submitted,

                                          */s/ David L Feinberg*
                                         Michael C. Davis (D.C. Bar No. 485311)
                                         David L. Feinberg (D.C. Bar No. 982635)
                                         Theodore B. Randles (D.C. Bar No. 156339)
                                         VENABLE LLP
                                         600 Massachusetts Avenue, N.W.
                                         Washington, DC 20001
                                         Tel: (202) 344-4000
                                         Fax: (202) 344-8300
                                         mcdavis@venable.com
                                         dlfeinberg@venable.com
                                         tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC,
Michael Haft, and Robert Haft*