IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRISON SUAREZ<br><br>*Plaintiff,*<br><br>v.<br><br>COMPASS COFFEE LLC, MICHAEL HAFT, and ROBERT HAFT<br><br>*Defendants.* | Civil Action No. 1:25-cv-89-SLS |

**DEFENDANTS COMPASS COFFEE LLC, MICHAEL HAFT, AND ROBERT HAFT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT III OF PLAINTIFF'S COMPLAINT**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................. 1

UNDISPUTED MATERIAL FACTS ................................................................................... 2

PROCEDURAL BACKGROUND ........................................................................................ 5

ARGUMENT ......................................................................................................................... 5

      I.      Legal Standard ................................................................................................ 5

      II.     Defendants Fully Satisfied Any Obligations Under the Fifth
            Amended Operating Agreement .................................................................... 6

CONCLUSION ...................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

\* *Allen v. El Paso Pipeline GP Co., LLC*,
  113 A.3d 167 (Del. Ch. 2014)..................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................................6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................6

*CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*,
  325 A.3d 1235 (D.C. 2024) ......................................................................................6

\* *H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003)..................................................................................6

*K St. Devs., LLC v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  69 F. Supp. 3d 45 (D.D.C. 2014) ............................................................................6

\* *Lyons Ins. Agency, Inc. v. Wilson*,
  No. 2017-0092-SG, 2018 WL 4677606 (Del. Ch. Sept. 28, 2018) ........................6

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...................................................................................................5

**Statutes**

RICO Act, 18 U.S.C. §§ 1962(c) and (d)....................................................................1, 5

**Other Authorities**

\* Fed. R. Civ. P 56(a) ............................................................................................................1

ii

\* = Principal authority

**INTRODUCTION**

This case presents a simple contract dispute arising from Compass Coffee's obligations, if any, to Plaintiff to repurchase his shares in the company pursuant to terms and conditions set forth in Compass Coffee's operating agreement. In an attempt to get more than what he is entitled to, Plaintiff spins a self-serving story of concealment, but the undisputed facts show that Plaintiff's story is false. Defendants did everything that was required under the operating agreement, and it was Plaintiff who abandoned any right he may have had in the past to a repurchase of his shares.

The actual facts are straightforward. Michael Haft and Plaintiff co-founded Compass Coffee LLC in 2013. After disputes arose, Plaintiff's employment with Compass Coffee was terminated in July 2021. Months afterwards, Plaintiff informed Michael Haft that he intended to exercise his right to a buyout of his ownership shares and requested a fair market valuation of his shares.

Michael Haft and Compass Coffee fully complied with their obligations under the operating agreement. Defendants do not dispute that Plaintiff was entitled to a fair market valuation. But the undisputed facts show that <u>Plaintiff received the valuation he requested</u> and then walked away and failed to exercise his right to a repurchase. In short, it was Plaintiff's inaction, not any conduct of Defendants, that kept the repurchase from occurring. Because there is no genuine issue as to any material fact, and because Defendants fully held up their end of the agreement, they are entitled to summary judgment as to Count III of Plaintiff's Complaint.

As Defendants demonstrate in their contemporaneously filed motion to dismiss, the Court need not even reach the merits of Plaintiff's breach of contract claim. Mem. Supp. Mot. to Dismiss at 2–3, ECF No. 11-1. As that motion shows, the Court should dismiss Plaintiff's only federal cause of action, his meritless claim based on the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and decline to exercise jurisdiction over Plaintiff's state-law claims, including his

breach of contract claim. *Id.* But in the event the Court reaches the breach of contract claim, it should grant summary judgment in favor of Defendants because the undisputed material facts show that Robert Haft had no obligations pertaining to the repurchase under the agreement, Compass Coffee and Michael Haft complied with their obligations, and no breach occurred at all.

## UNDISPUTED MATERIAL FACTS

Michael Haft and Plaintiff are co-founders of Compass Coffee LLC and parties to Compass Coffee's Fifth Amended Operating Agreement with an effective date of November 10, 2020. Statement of Undisputed Material Facts ("Statement") ¶ 1. Section VI.10 of the Fifth Amended Operating agreement governs the timing and procedures for the option for a specified repurchase of a Compass Coffee founder's ownership Units upon the founder's termination from the company. *Id.* ¶ 2. The Fifth Amended Operating agreement sets forth those procedures as follows:

> The Founders, Michael Haft and Harrison Suarez ("The Founders") shall each have the option to sell part or all of their Units back to the Company for a period of 120 days from the effective date of termination, for any reason. The Repurchase Price of each Unit shall be the Fair Market Value as determined by a valuation firm (or accountant, or accounting firm) selected by the Founders, and paid for by the Company. Any repurchase shall be consummated within 30 days after determination of Fair Market Value of Units held by Founders ( [sic] for the Company as a whole, and without any liquidity discounts, minority discounts, or lack of marketability for a closely held entity. The Company shall not have any right to repurchase Units from the Founders, unless Founders exercise their right to sell part or all of their Units back to the Company.

*Id.*

Accordingly, under Section VI.10, the "Founders," defined as Michael Haft and Plaintiff, were obligated to select a valuation firm, accountant, or accounting firm to determine the fair market value of a Founder's ownership Units. *Id.* ¶ 3. The Founder seeking to sell its Units to the Company would then have 30 days after the determination of fair market value to proceed with Compass Coffee buying his Units at the fair market value computed by the firm or accountant that the founders had selected. *Id.* ¶ 4. As Section VI.10 makes clear, the obligation to purchase a

Founder's Units is that of Compass Coffee only (the Founders "shall each have the option to sell part or all of their Units back to the Company"), and Compass Coffee has no right to force a repurchase of a Founder's Units if the Founder does not elect to proceed with the repurchase. *Id.* ¶¶ 2, 4–5.

Plaintiff's employment with Compass Coffee was terminated on July 19, 2021. *Id.* ¶ 6. Months later, on November 15, 2021, Plaintiff informed Michael Haft via e-mail that he intended to exercise his right to a repurchase of his ownership Units in Compass Coffee under Section VI.10 and requested a fair market valuation of them. *Id.* ¶ 7.

Consistent with Section VI.10, the Founders, including Plaintiff, jointly selected the valuation firm Gorfine, Schiller & Gardyn ("GSG"). *Id.* ¶¶ 7–9. By e-mail, Plaintiff informed Michael that he would accept a valuation conducted by GSG. *Id.* ¶¶ 8–9. Indeed, Plaintiff told Michael Haft to "Please proceed" when Michael stated he would "get a quote from GSG to do a more in-depth valuation of Compass . . . ." *Id.* ¶ 8. Later in the same correspondence, Michael Haft told Plaintiff that he had met with a representative of GSG "to go over the scope of work and timeline" for the valuation, and Plaintiff instructed Michael, "Since settlement seems to have stalled, please proceed with the valuation of the company." *Id.* ¶ 9. There was absolutely no objection to GSG. *Id.* ¶ 10.

As the valuation proceeded, Plaintiff provided input into the content that he wanted included in GSG's valuation. Plaintiff gave instructions for Michael Haft to consider "In reviewing the documents related to the Fair Market Valuation," including to "clarify and ensure that GSG's assignment is to conduct a Fair Market Valuation of the company as a whole" and to make specific notes about Compass's loans. *Id.* ¶ 11.

3

The valuation by GSG was issued on April 18, 2022, and provided to Plaintiff on or about that date. *Id.* ¶ 12. Although Plaintiff tries to cast doubt on the valuation, e-mail correspondence shows that he asked for and received a detailed explanation of how it was calculated. *Id.* ¶¶ 13–15. Over a series of e-mails between April 19–26, 2022, GSG explained that Plaintiff, instead of considering the value of Compass as a whole, was focusing only on the capital invested in the company and ignoring the balance of the loans owed to lenders:

> The value of the 'invested capital' of the company is ~$11.7M. One way to think about invested capital is to analogize it to a house w/ a mortgage. The value of an owner's equity in a house equals the value of the house less the mortgage balance. The value of all the equity in Compass equals:
>
> - the ~$11.7M value of the Compass's assets (i.e. the present value of all the expected future cash flows it will generate – not so much the tables and chairs but moreso the goodwill associated w/ paying customers that keep coming back)
> - less the ~$10.2M balance of all the loans the company owes back to the lenders
> - [$11.7M invested capital] minus [$10.2M loans] equals [$1.5M equity]

*Id.* ¶¶ 14–15. Plaintiff never followed up on GSG's explanation by stating that the valuation was flawed or incorrect at all. *Id.* ¶ 16.

The Fifth Amended Operating Agreement provides that Plaintiff had thirty days thereafter to proceed with Compass buying his Units at the amount computed by GSG. *Id.* ¶¶ 2, 4, 19–20. The agreement further provided that "The Company shall not have any right to repurchase Units from the Founders, unless Founders exercise their right to sell part or all of their Units back to the Company." *Id.* ¶¶ 2, 5, 21. Since it is undisputed that Plaintiff did not exercise his right to sell his Units back at the fair market value computed by GSG, the time to do so has now elapsed. *Id.* ¶ 22–24. On May 24, 2023, the Compass Coffee Board of Directors resolved by unanimous written consent that GSG's valuation report fulfilled Compass Coffee's obligations regarding Plaintiff's

4

request for a fair market valuation, and that Plaintiff did not give notice of his intent for Compass Coffee to repurchase his Units within 30 days of receiving the report. *Id.* ¶ 24.

## PROCEDURAL BACKGROUND

Plaintiff filed this action on January 13, 2025, bringing causes of action for alleged violations of the RICO Act, common law fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duties. Compl. ¶¶ 129–97, ECF No. 1. As Defendants have argued in their concurrently filed motion to dismiss, Plaintiff's Complaint is meritless, and the Court should dismiss all counts based on deficiencies on the face of the Complaint and the documents that he cites. Mem. Supp. Mot. to Dismiss at 2–3. In the event that the Court proceeds to the merits of the breach of contract claim, it should grant summary judgment on that claim in Defendants' favor because the undisputed material facts show that Compass Coffee and Michael Haft fully complied with their obligations under the company's operating agreement and are entitled to judgment as a matter of law.[1]

## ARGUMENT

**I.      Legal Standard**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). When the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

---

[1]      Robert Haft has no obligations under the operating agreement pertaining the repurchase, Statement ¶¶ 2–5, and thus, the claims against him must be dismissed. Mem. Supp. Mot. to Dismiss at 29–30.

non-moving party may not rely on "mere allegations or denials," but rather "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks and citation omitted). Thus, a moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Defendants Fully Satisfied Any Obligations Under the Fifth Amended Operating Agreement

To prevail on a claim for breach of contract under Delaware law, a plaintiff must prove "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[2] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). When a party performs the contractual obligations it is alleged to have breached, no action for breach of contract lies. *See Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 181–82 (Del. Ch. 2014) (granting summary judgment on breach of contract claim in favor of defendant when it complied with the terms of the applicable partnership agreement in obtaining approval for a drop-down transaction); *Lyons Ins. Agency, Inc. v. Wilson*, No. 2017-0092-SG, 2018 WL 4677606, at *7–8

---

[2] Under the Fifth Amended Operating Agreement, Plaintiff's claim for breach of contract (Count III) is governed by Delaware law. *See* **Exhibit A** at 32 ("This Agreement and the application or interpretation hereof shall be governed exclusively by the terms of the laws of the State of Delaware without effect to its conflicts of laws provisions."); *K St. Devs., LLC v. Tchrs. Ins. & Annuity Ass'n of Am.*, 69 F. Supp. 3d 45, 56–57 (D.D.C. 2014) (applying Delaware law to breach of contract claim between parties to an LLC agreement because the "LLC Agreement [was] governed by Delaware law").

Even if the Court applied District of Columbia law to the breach of contract claim, the result would be the same, as the two jurisdictions use functionally identical elements for breach of contract claims. *See, e.g.*, *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1244–45 (D.C. 2024) ("Under District of Columbia law, a party asserting breach of contract must prove four elements: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'") (internal citation omitted).

6

(Del. Ch. Sept. 28, 2018) (granting partial summary judgment on breach of contract claim in favor of defendant who complied with confidentiality provisions in his employment agreement).

Count III alleges that Michael Haft and Compass breached Section VI.10 of the Compass Coffee Fifth Amended Operating Agreement by "failing to use reasonable best efforts to consummate the repurchase of [Plaintiff's] founders shares . . . ." Compl. ¶¶ 175–85. Plaintiff alleges that on or about November 15, 2021, he requested a fair market valuation of his Units. *Id.* ¶ 106. All the Fifth Amended Operating Agreement requires is for the fair market value to be "determined by a valuation firm (or accountant, or accounting firm) selected by the Founders, and paid for by the Company." Statement ¶¶ 2–4. *This was done*.

First and foremost, the valuation firm GSG was jointly selected by the Founders, which includes Plaintiff. In the e-mail string to which Plaintiff alludes in paragraph 106 of the Complaint, Plaintiff informed the Hafts that he would accept GSG and told Michael Haft to "Please proceed" when Michael stated he would "get a quote from GSG to do a more in-depth valuation of Compass . . . ." *Id.* ¶ 8. Plaintiff affirmed that decision later in the same correspondence when he again instructed Michael Haft to "please proceed with the valuation of the company." *Id.* ¶ 9.

Moreover, in that same e-mail string, Plaintiff provided input into the content that he wanted included in GSG's valuation. **Exhibit C** at 1 (providing instructions to Michael Haft "In reviewing the documents related to the Fair Market Valuation," including to "clarify and ensure that GSG's assignment is to conduct a Fair Market Valuation of the company as a whole" and to make specific notes about Compass's loans); Statement ¶ 11. Plaintiff never alleges that Compass failed to pay for the valuation conducted by GSG.

Second, Plaintiff cannot allege that the Fair Market Valuation violated the Operating Agreement merely because it resulted in a fair market value of his share of Compass less than his

7

original investment. Compl. ¶ 115. Business investments can be less successful than an original investment. That fact in no way renders the valuation non-compliant with the Operating Agreement, all of which GSG explained to Plaintiff, and which Plaintiff accepted. Statement ¶¶ 13–16.

In paragraph 115 of the Complaint, Plaintiff alleges that he asked GSG how the fair market value for his share of the company was calculated. The e-mail string to which Plaintiff alludes shows the answer. **Exhibit E** at 5 (asking GSG to "explain your math on the value of [Plaintiff's] share of the company"); Statement ¶ 13. Over a series of e-mails between April 19–26, 2022, GSG explained the valuation in detail. Statement ¶¶ 14–15. GSG explained that Plaintiff was making a fundamental mistake. Instead of considering the value of Compass as a whole, Plaintiff was focusing only on the capital invested in the company and ignoring the balance of the loans owed to lenders:

> The value of the 'invested capital' of the company is ~$11.7M. One way to think about invested capital is to analogize it to a house w/ a mortgage. The value of an owner's equity in a house equals the value of the house less the mortgage balance. The value of all the equity in Compass equals:
>
> - the ~$11.7M value of the Compass's assets (i.e. the present value of all the expected future cash flows it will generate – not so much the tables and chairs but moreso the goodwill associated w/ paying customers that keep coming back)
> - less the ~$10.2M balance of all the loans the company owes back to the lenders
> - [$11.7M invested capital] minus [$10.2M loans] equals [$1.5M equity]

*Id.* ¶ 14–15. Plaintiff never followed up to state that the valuation was flawed or incorrect. *Id.* ¶ 16.

Third, under the Fifth Amended Operating Agreement, Plaintiff had thirty days to proceed with Compass buying his Units at the amount computed by GSG. *Id.* ¶¶ 2, 19–20. Compass has no right to force a repurchase if Plaintiff did not voluntarily elect to proceed. *Id.* ¶¶ 2, 5, 21.

8

Plaintiff does not allege that within the thirty days he elected to sell part or all of his Units back to the Company. Nor can he, as his correspondence proves he never followed up to make such an election, and he continues to own his membership Units. *Id.* ¶¶ 22–23. Accordingly, because the undisputed material facts show that Compass Coffee and Michael Haft complied with their obligations under the Fifth Amended Operating Agreement, and that Robert Haft had no obligations pertaining to the repurchase, the Court should grant summary judgment in their favor on Plaintiff's breach of contract claim.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on Count III in favor of Defendants.

Dated: March 18, 2025

Respectfully submitted,

*/s/ David L. Feinberg*
Michael C. Davis (D.C. Bar No. 485311)
David L. Feinberg (D.C. Bar No. 982635)
Theodore B. Randles (D.C. Bar No. 156339)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
mcdavis@venable.com
dlfeinberg@venable.com
tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC, Michael Haft, and Robert Haft*