IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRISON SUAREZ<br><br>*Plaintiff,*<br><br>v.<br><br>COMPASS COFFEE LLC, MICHAEL HAFT, and ROBERT HAFT<br><br>*Defendants.* | Civil Action No. 1:25-cv-89-SLS |

**DEFENDANTS COMPASS COFFEE LLC, MICHAEL HAFT, AND ROBERT HAFT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S REQUEST FOR DISCOVERY**

Plaintiff's claim is a business dispute, plain and simple, dressed up as a RICO action. *See* Mem. Supp. Mot. to Dismiss at 10–25, ECF No. 11-1. The Court should dismiss the RICO claim, which is the sole basis for federal jurisdiction, and decline to extend jurisdiction over the remaining state law Counts.[1]

But if the Court addresses Plaintiff's state law claims – including Count III, the subject of this reply brief – it will see that it is without any legal or factual foundation. The facts recounted in Defendants' Statement of Undisputed Facts are not contested by Plaintiff with any counter-declaration, Statement of Disputed Facts, or other documents or e-mails. The undisputed facts show that Plaintiff, based on e-mails that he himself authored, agreed to the valuation firm, participated in the valuation of his ownership interest, provided input into the valuation, and

---

[1] Plaintiff's opposition concedes that the sole alleged basis for federal jurisdiction is Count I. *Compare* Mem. Supp. Mot. Partial Summ. J. at 1–2, ECF No. 12-1, *with* Pl.'s Opp. Mot. Partial Summ. J., ECF No. 16 (failing to dispute the probable lack of jurisdiction over Plaintiff's breach of contract claim), *and* Mem. Opp. Mot. Stay at 6, ECF No. 17 (arguing that any discovery in federal court would be useful in litigating state-law causes of action in D.C. Superior Court).

reviewed and commented on the draft valuation. The valuation firm then addressed Plaintiff's comments and finalized the valuation, which the Compass board of directors approved. They also show, and Plaintiff does not contest, that he never exercised his option to sell. The Fifth Amended Operating Agreement was thus complied with, entitling Defendants to summary judgment as a matter of law and undisputed fact.

Instead of contesting the substance of this evidence, Plaintiff instead contends that he needs discovery under Rule 56(d). But Plaintiff's request for discovery is simply feigning blindness to the process in which he fully participated. As set forth in detail below, none of the discovery requests can raise a genuine issue based on the facts that he has already admitted and that are assembled in the record. Plaintiff seeks a fishing expedition, and the Court should not grant one. This Court should deny Plaintiff's request for discovery and grant summary judgment on Count III in Defendants' favor.

## ARGUMENT

I. **Plaintiff Failed to Dispute that Defendants Fully Complied With Any Obligations Under the Buyout Provision.**

    A.    <u>Defendants Satisfied Section VI.10 of the Fifth Amended Operating Agreement.</u>

No action for breach of contract lies where, as here, Defendants have performed, not violated, their contractual obligations. *See Allen v. El Paso Pipeline GP Co., LLC*, 113 A.3d 167, 181–82 (Del. Ch. 2014) (granting summary judgment on breach of contract claim when it fulfilled its obligations under the applicable partnership agreement); *Lyons Ins. Agency, Inc. v. Wilson*, No. 2017-0092-SG, 2018 WL 4677606, at *7–8 (Del. Ch. Sept. 28, 2018) (granting partial summary judgment on breach of contract claim in favor of defendant who complied with confidentiality provisions in his employment agreement).

Here, Section VI.10 of the Fifth Operating Agreement imposes obligations on the "Founders," defined as Michael Haft and Plaintiff, to jointly select a valuation firm, and on Compass Coffee LLC to pay for the fair market valuation.[2] Statement of Undisputed Material Facts ("Statement") ¶¶ 2–3, ECF No. 12-2. Michael Haft and Compass satisfied these obligations.

Michael Haft and Plaintiff agreed to use GSG to obtain the fair market value contemplated by Section VI.10. *See* Mem. Supp. Partial Summ. J. at 7, ECF No. 12-1. Plaintiff *twice* told Michael Haft to proceed with GSG. Statement ¶ 9. Plaintiff does not contest this with any admissible evidence despite admittedly having personal knowledge and being intimately involved. This is because Plaintiff's e-mails reveal the truth – Plaintiff expressly agreed to a valuation by GSG, writing unambiguously to Michael Haft, "please proceed *with the valuation of the company*." *Id.* (emphasis added). Plaintiff not only consented to use GSG; he pushed Compass to expedite GSG's work. Plaintiff told Michael Haft to, "Please proceed. *Remember, there's a time limit.*" **Exhibit B** at 1, ECF No. 12-4 (emphasis added). As the process continued, Plaintiff asked, "Can you give me an update on this? *When do you think you'll have the valuation complete?*" *Id.* at 2 (emphasis added).

Plaintiff's e-mails, and an electronic record of the steps that Plaintiff took with respect to the valuation, show that he fully participated in, and provided input into, GSG's valuation. Plaintiff directed Michael Haft to provide specific information to GSG, and Plaintiff edited the Google drive documents that were provided to GSG.[3] *See* **Exhibit C** at 1, ECF No. 12-5. He told Michael Haft to clarify GSG's assignment for the valuation and instructed GSG about the nature

---

[2]   Plaintiff does not dispute that Section VI.10 imposes no obligation on Robert Haft.

[3]   Plaintiff had access to *everything* Compass Coffee provided to GSG for the valuation and continued to access Compass Coffee's systems through June of 2022.

of some of Compass Coffee's loans and how they should be included in the valuation. *Id.* On December 14, 2021, he e-mailed Michael Haft to expedite the agreed upon valuation, asking "When do you plan to send in the information?" *Id.* Weeks later, on January 6, 2022, he followed up, "Are you still planning to submit to the appraiser this week?" *Id.* at 2. On January 19, 2022, he again asked, "When do you think you'll submit to the appraiser?" *Id.* at 4. And only two days later, on January 21, 2022, he requested, "[W]ill you please also cc me when you submit everything to the appraiser?" *Id.* Nowhere is any objection to the valuation firm.

It is uncontested that GSG conducted the valuation and issued the valuation report on April 18, 2022, and Plaintiff received the report from GSG on or about that date. Statement ¶ 12; **Exhibit I**. Plaintiff then asked for an explanation of how the valuation was calculated. Statement ¶¶ 13–15. GSG explained the valuation in detail and told Plaintiff the valuation was final. **Exhibit E** at 5–8, ECF No. 12-7. Plaintiff was provided the final valuation in this litigation.[4] There are no substantive differences between the draft valuation and the final valuation.[5] And it is undisputed that Plaintiff never exercised his option to sell, a fact that he does not even contest. Statement ¶ 23.

      B.      <u>Plaintiff Could Have Offered Evidence in Opposition but Failed to Produce Any.</u>

A party opposing summary judgment must produce evidence disputing the facts asserted by the movant. *See* Fed. R. Civ. P. 56(c)(1) (non-movant must support his assertion that facts offered by the movant are genuinely disputed). This Court requires that a party opposing summary judgment file a "separate concise statement of genuine issues setting forth all material facts as to

---

[4] Defendants inadvertently submitted a copy of the final valuation report as Exhibit D to their Statement of Undisputed Material Facts instead of the draft valuation report as intended. A copy of the draft valuation report is being submitted herewith as Exhibit I.

[5] The only differences between the draft and final versions are the addition of the date and valuator's signature and removal of the "DRAFT 04-18-2022" watermark. A blacklined copy of the final report, which highlights these changes, is submitted herewith as Exhibit K.

which it is contended there exists a genuine issue necessary to be litigated[.]" LCvR 7(h)(1). That statement must reference the factual record. *Id.* Accordingly, "a party opposing a properly supported motion for summary judgment 'may not rest upon the allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Barlow v. McLeod*, 666 F. Supp. 222, 226 (D.D.C. 1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

Courts "require strict compliance with" these local rules. *See Ladd v. Chemonics Intern., Inc.*, 603 F. Supp. 2d 99, 105 (D.D.C. 2009) (requiring strict compliance with LCvR 56.1, the predecessor to LCvR 7(h)). When the opponent fails to file a statement of genuine issues controverting the movant's evidence, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted[.]" LCvR 7(h)(1). Case law bears out these rules; when the non-movant fails to dispute the movant's factual assertions, courts properly "treat such facts as admitted." *See Ladd*, 603 F. Supp. 2d at 105 ("Accordingly, where [the movant's] factual assertions are properly supported by the record, as confirmed by the Court's own independent review, the Court shall treat such facts as admitted.").

Plaintiff has failed to adequately dispute *any* of the relevant facts nor has he offered any admissible evidence to do so. His counsel argues he did not consent to a fair market valuation to GSG, but provides no admissible evidence in support and ignores that he e-mailed Michael Haft for GSG to "proceed with the valuation of the company." *Compare* Statement ¶ 9, *with* Pl.'s Opp. Mot. Partial Summ. J. at 12–13 (failing to dispute). Plaintiff then argues that the valuation that he participated in was flawed and never finalized but, again, submits no admissible evidence. Plaintiff only cites to his Complaint, which is insufficient to show a triable issue of fact. *See* Pl.'s Opp. Mot. Partial Summ. J. at 10–11 (asserting the valuation report was "infected by a series of critical

5

flaws, *as [Plaintiff] has alleged in detail*," and that because he "*alleges no fair market valuation was ever conducted,*" his time to consummate a buyout never began) (emphasis added); *Barlow*, 666 F. Supp. at 226 (party opposing summary judgment may not rest on allegations of the complaint).

Plaintiff easily could have supplied contrary evidence, if it existed. He was intimately and personally involved. His Complaint runs for 43 pages, containing 197 allegations. With only a few keystrokes, he could have submitted his own declaration providing his account (if it differed from the one Defendants have presented). He could have submitted any of his own e-mails with Michael Haft if they raised a dispute as to any one of the material facts. Moreover, on multiple occasions, counsel for Defendants offered to share information with Plaintiff's counsel if needed to respond to the motion. They refused, revealing that the request for discovery is a charade; not a genuine quest for information but simply an attempt to buy time. **Exhibit H** (3/31/25 Lockwood-Feinberg e-mail) at 1. Instead, Plaintiff rested on his allegations, which is inadequate at the summary judgment stage. Because the material facts underlying the breach of contract claim are not in dispute, the Court should grant summary judgment on that claim in Defendants' favor.

**II.     The Rules Expressly Allow Summary Judgment Motions to Be Made at Any Time, and Plaintiff Has Failed to Show He Needs Discovery In Opposition.**

   A.     Defendants' Motion is Timely.

A party may move for summary judgment at any time. Fed. R. Civ. P. 56(b) ("[A] party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery.") (emphasis added). As decisions of this Court have recognized, Rule 56 permits motions for summary judgment "at the beginning of a case before discovery has commenced." *Austin v. Washington Metro. Area Transit Auth.*, Nos. 19-cv-2718 (DLF); 19-cv-2815 (DLF), 2020 WL 2962609, at *7 (D.D.C. May 28, 2020); *see Parker v. Hoglander*, No. 15-926 (JDB), 2016 WL

6

3527014, at *3 (D.D.C. June 23, 2016) ("A motion for summary judgment can thus be too late, but not too early; 'at any time' does in fact mean 'at any time.'").

Summary judgment is particularly appropriate at an early stage when, as here, the opponent offers no evidence supporting his claims and "no reasonable basis" to suggest that discovery would bear out his claims. *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237–38 (D.C. Cir. 1999) (affirming pre-discovery grant of summary judgment to defendant when the plaintiff moved for more discovery but offered only "conclusionary assertion[s]" that the discovery would support her claims). Similarly, courts recognize that early summary judgment is appropriate when the non-movant already possesses information that would let him oppose the motion. *Partridge v. Am. Hosp. Mgmt. Co., LLC*, 289 F. Supp. 3d 1, 20 (D.D.C. 2017) (granting summary judgment in part because although the opponents claimed to need more discovery, "much of the information at issue . . . [was] already in their possession").

      B.      <u>Plaintiff Has Failed to Show He Needs Discovery to Oppose Defendants' Motion.</u>

Plaintiff submits no evidence in response. Not a single e-mail, letter, document, or sworn statement. In the complete absence of any actual evidence, Plaintiff instead pleads complete ignorance of the valuation process, a truly incredible position given his documented involvement and his prolix Complaint, and instead asks the Court to defer summary judgment until he can conduct discovery, referencing Rule 56(d).

But contrary to Plaintiff's opposition, a vague and conclusory Rule 56(d) affidavit is not an automatic ticket to more discovery. *See Partridge*, 289 F. Supp. 3d at 19 ("[Rule 56(d)] was not created to act as a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious."). Instead, the party seeking relief under Rule 56(d) "bears the burden of making the required 'showing.'" *See Harrison v. Off. of the Architect of the Capitol*, 281 F.R.D. 49, 51 (D.D.C. 2012) (party seeking

7

discovery must show "<u>for specified reasons,</u> [he] cannot present facts essential to justify [his] opposition" to the summary judgment motion) (emphasis added). That burden requires Plaintiff to (1) show the "particular facts [the non-movant] intends to discover and describe *why those facts are necessary to the litigation*," (2) explain "*why the non-movant could not produce* the facts in opposition to the motion for summary judgment," and (3) show that the information is discoverable. *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (emphasis added) (quoting *Convertino v. U.S. Dep't of Just.*, 684 F.3d 9, 99–100 (D.C. Cir. 2012)).

Here, Plaintiff does not show why he cannot produce any evidence on his own. His claims of ignorance are particularly striking given his verbose Complaint. Moreover, no reason for his lack of evidence is provided. Plaintiff's counsel's declaration, the sole declaration submitted, falls well short of the showing required by *Convertino* and its progeny. Plaintiff has utterly failed to explain why he does not possess these facts or even why the facts he claims to need are "necessary to the litigation." *Convertino*, 684 F.3d at 99. Indeed, Plaintiff has offered "no reasonable basis" to suggest that discovery would salvage his breach of contract claim at all. No amount of discovery will change the requirements of Section VI.10 of the Fifth Operating Agreement, which Plaintiff does not dispute. *See* **Exhibit A** at 20, ECF No. 12-3. Similarly, no amount of discovery will change that Plaintiff expressly consented to a valuation by the selected company on multiple occasions, writing: "Please proceed. Remember, there's a time limit"; "Can you give me an update on this? When do you think you'll have the valuation complete?"; and most unambiguously, "please proceed *with the valuation of the company*." **Exhibit B** 1–2 (emphasis added). Plaintiff instructed Michael Haft on specific information to provide to the valuator and made changes to the Google drive documents that the valuator was provided. *See* **Exhibit C** at 1. Plaintiff then grew impatient to obtain the agreed upon valuation, asking over the course of several weeks:

"When do you plan to send in the information?"; "Are you still planning to submit to the appraiser this week?"; "When do you think you'll submit to the appraiser?"; and "[W]ill you please also cc me when you submit everything to the appraiser?" *Id.* at 1–3. Nowhere did he dispute the selection of the valuator.

Again, Plaintiff cannot dispute the admissible facts, and discovery will not change them. Nor will discovery change the fact that Plaintiff never elected to complete the buyout of his shares – a fact that, again, Plaintiff does not dispute. He also does not explain why he does not possess any information on these important topics. Plaintiff instead merely asked for discovery. But "Rule 56(d) does not require a court to deny a motion for summary judgment in order to permit a plaintiff to embark on discovery in the vague hope that he will uncover something to substantiate speculative allegations." *Turner v. U.S. Capitol Police*, 34 F. Supp. 3d 124, 137 (D.D.C. 2014). Plaintiff has failed to show why he is apparently without any evidence on the very issues he sued over or how the discovery he seeks will enable him to oppose summary judgment.[6]

Instead, Plaintiff merely offers a list of topics to guide the fishing expedition that he seeks. But as the Court can see, none of the items on Plaintiff's list are, as *Convertino* requires, "necessary to the litigation" given the narrow issues pertaining to his breach of contract claim and Defendants' motion:

---

[6] Separately, Plaintiff has shown no initiative towards taking discovery, and has in fact indicated he intends to delay further. Plaintiff "may not invoke the shelter of Rule 56(f) to excuse [his] own lack of diligence in demonstrating to the Court that there is indeed a genuine issue of fact[.]" *Green v. Am. Broad. Cos., Inc.*, 647 F. Supp. 1359, 1364 (D.D.C. 1986). As Defendants show in their reply in support of their motion to stay discovery, ECF No. 19, Plaintiff has been able to serve discovery for weeks and has failed to serve any requests at all. Moreover, he has represented to the Court that he "[does] not intend to issue discovery" until the Court issues a scheduling order or holds a scheduling conference. Mem. Opp. Mot. Stay at 6–7. Plaintiff's lack of effort is flatly inconsistent with his assertion that discovery is vital to his case.

| **Subject of Discovery (ECF No. 16-1)** | **Defendants' Response** |
|---|---|
| a. Whether Harrison's request that Defendants honor his demand to proceed with a valuation of the Company pursuant to Section VI.10 of the Fifth Amended Operating Agreement reflected specific consent to use GSG to conduct this valuation. | Plaintiff's own correspondence reflects his consent, and Plaintiff has not denied making any of the statements constituting his consent. Plaintiff's statements included his clear directive to "please proceed with the valuation of the company." **Exhibit B** at 2. Plaintiff's consent was unambiguous and repeated, and discovery cannot change this fact. |
| b. Whether GSG ever prepared a final valuation report and, if so, whether that final report contained any material changes from the draft Harrison was sent in 2022. | Plaintiff knows that the April 2022 report was finalized without change. When Plaintiff asked what remained between the report and "finalization," GSG answered that as long as there were no changes to certain of the report's inputs, he would "remove the draft stamp, sign and resend." **Exhibit E** at 4–5. The report was finalized. Decl. of Michael A. Haft in Further Supp. of Partial Summ. J. ¶¶ 11–14. He was provided a copy of the final report in this litigation. There are no substantive changes between the draft report and the final report. Moreover, the report was approved by the company's board. Statement ¶ 24. Discovery will not change these facts. |
| c. Whether Defendants' written agreement in May 2023—more than one year after the GSG Draft Report was prepared—to conduct a fair market valuation of the Company reflects their agreement that the GSG Draft Report was not a fair market valuation as contemplated by the Fifth Amended Operating Agreement. | This appears to reference settlement discussions that are, as the parties agreed, inadmissible for any purpose. It is highly improper for Plaintiff's attorney to use it as the basis to seek discovery. In any case, Plaintiff has access to all the correspondence his attorneys exchanged during settlement negotiations, so there is no need for discovery. Moreover, that Plaintiff's attorneys may have proposed another valuation has no bearing on whether Defendants completed the valuation required by the Fifth Amended Operating Agreement. |

| Subject of Discovery (ECF No. 16-1) | Defendants' Response |
|---|---|
| d. Information concerning the inputs Defendants provided to GSG to prepare the GSG Draft Report. This likely will require not only party discovery, but also third party discovery of GSG concerning the inputs they were provided, their understanding of the purpose and scope of the valuation, and whether they were aware of certain critical facts, such as that Michael Haft was making representations to lenders and potential investors during the relevant time period that Compass Coffee was worth more than $75 million, among other topics. This will also reveal what inputs Defendants provided to GSG in connection with an earlier valuation GSG conducted of the Company in August 2020 (which concluded the Company was worth approximately $45 million), versus the inputs Defendants provided to GSG in connection with the April 2022 GSG Draft Report. | Plaintiff had access to all information provided to the valuation company, and he took an active role in directing inputs and instructions to valuation company. **Exhibit C** at 1 (providing instructions to Michael Haft "In reviewing the documents related to the Fair Market Valuation," including to "clarify and ensure that GSG's assignment is to conduct a Fair Market Valuation of the company as a whole" and to make specific notes about Compass's loans). Moreover, Plaintiff never directed the valuator to include in its analysis the content that he now contends was important. |
| e. Representations Defendants made to lenders, potential investors, and others about the value of the Company at and around the time Harrison requested the fair market valuation, the GSG Draft Report was prepared, and subsequently ratified. This, too, likely will require not only party discovery (for example, presentations or reports prepared for potential investors, or interrogatories concerning which investors Defendants were courting at this time, and since), but also discovery of third party lenders and prospective investors. | Alleged representations about the value of Compass Coffee as a whole, including projections about *future* revenue potential, are irrelevant to what Plaintiff's minority stake in the company was worth at a specific time in the past. Defendants properly obtained a fair market valuation as required by the buyout provision. |

11

| Subject of Discovery (ECF No. 16-1) | Defendants' Response |
|---|---|
| f. Representations Defendants made to the public about the value of the Company between 2021 to present. For example, in November 2021, Michael Haft claimed during a podcast episode that Compass Coffee had done $20 million of revenue through the 12 cafés it had at the time. As another example, Union Kitchen shared posts on social media in August 2023 stating that Compass Coffee had been valued at approximately $50 million. | Alleged representations about the value of Compass Coffee as a whole, including projections about *future* revenue potential, are irrelevant to what Plaintiff's minority stake in the company was worth at a specified time in the past when the valuation was performed. Defendants properly obtained a fair market valuation as required by the buyout provision. |
| g. Internal communications between Michael Haft, Robert Haft, Cullen Gilchrist (Union Kitchen's CEO), and others at Compass Coffee and/or Union Kitchen (also owned by the Hafts) about the present value of and financial projections for the Company during the relevant period. | The alleged views of Michael Haft, Robert Haft, or anyone else about Compass Coffee's value are irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. |
| h. Third party discovery of Nicola Kenny, Compass Coffee's former Controller, and Matt Abend, Compass Coffees' former Vice President of Finance, concerning Compass's financial situation and revenue projections during the relevant period. | The alleged views of third parties about Compass Coffee's financial situation and projected future revenues are irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. |
| i. Information concerning the value of the Company's consumer-packaged goods business. *See, e.g.*, Compl. ¶¶ 3, 38, 79, 125, 144. This could include, for example, communications between Defendants and distributors and grocery chains (e.g. Whole Foods, Giant stores). | The valuation report establishes that GSG considered Compass Coffee's packaged goods business in valuing Plaintiff's interest. *See* **Exhibit I** at 21 (*Exhibit 5.2* to the report) (considering revenues from "Goods" as distinct from "Stores"). Any further information pertaining to the packaged goods business is irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. |

| **Subject of Discovery (ECF No. 16-1)** | **Defendants' Response** |
|---|---|
| j. Information concerning the Company's green coffee ordering and contracting, which could reveal the Company's projected growth of roasting. | The valuation report shows that GSG already accounted for Compass Coffee's projected growth. *See* **Exhibit I** at 14 (*Exhibit 2* to the report) (projecting revenue growth to determine Compass Coffee's value through the discounted cash flow method). Moreover, speculation regarding Compass Coffee's "projected growth of roasting" is irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. |
| k. Information concerning any lease negotiations Defendants undertook with respect to the café business, which could reveal information about Defendants' project growth rate of the café business. | The valuation report shows that GSG already accounted for Compass Coffee's projected growth. *See* **Exhibit I** at 14 (*Exhibit 2* to the report) (projecting revenue growth to determine Compass Coffee's value through the discounted cash flow method). Moreover, speculation regarding Compass Coffee's "projected growth rate of the café business" is irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. |
| l. Potential expert discovery concerning the sham nature of and flaws included in the draft GSG report. | Speculation about GSG's report, or the suggestion that another valuator could identify flaws therein, are irrelevant to whether Defendants properly obtained a fair market valuation as required by the buyout provision. Moreover, Plaintiff already asked GSG to explain what Plaintiff perceived as flaws in the valuation, GSG gave a detailed explanation, and Plaintiff never followed up for more information. **Exhibit E** at 6–7.[7] |

At bottom, *none* of the topics on which Plaintiff claims to need discovery would come close to creating a genuine dispute as to any of the facts material to Defendants' motion. The

---

[7] Further, Plaintiff's allegation that the Hafts "handpicked their family accountant" is not supported by the facts. Plaintiff consented to GSG valuing the business and indeed pushed Compass to expedite GSG's valuation.

13

Court need not indulge Plaintiff's speculation. *See Bastin v. Fed. Nat'l Mortg. Ass'n,* 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."). Plaintiff has failed to meet his burden under *Convertino*, and his request for more discovery should be denied.

The D.C. Circuit's decision in *U.S. ex rel. Folliard v. Government Acquisitions, Inc.* provides a useful template for the Court. There, the D.C. Circuit affirmed the district court's denial in part of the plaintiff's Rule 56(d) requests because the plaintiff failed to show how the discovery he sought was necessary to the litigation. 764 F.3d at 28–29. In that case, a *qui tam* relator sued a company called Govplace, alleging that Govplace sold the federal government products originating from "non-designated" countries in violation of the Trade Agreements Act ("TAA"). *Id.* at 21. Over a series of orders, the district court denied the plaintiff's Rule 56(d) requests almost in their entirety, and even after allowing limited discovery, granted summary judgment in favor of Govplace on all claims. *Id.* at 21–22.

The D.C. Circuit affirmed the denials of Rule 56(d) relief and the grants of summary judgment. *Id.* at 31. It held that the district court properly denied Rule 56(d) relief because the plaintiff failed to show that the discovery was necessary. *Id.* at 28–29. Although the plaintiff sought discovery on certain of Govplace's sale contracts, Govplace had shown that those contracts were exempt from the TAA, and so any discovery on them "would [not] create a triable issue." *Id.* at 28 (quoting *Convertino*, 684 F.3d at 99). Similarly, plaintiff was not entitled to take depositions that he sought on separate contracts because he "already had a copy of the relevant contracts" and did "not indicate why the depositions would reveal any information beyond what is apparent on the face of the contracts[.]" *Id.* at 29. Having denied these discovery requests, the district court

14

properly granted summary judgment to Govplace on the claims pertaining to those contracts. *Id.* at 31.

As *Folliard* shows, far ranging requests for discovery like Plaintiff's are *not* simply granted as a matter of course.[8] Decisions in this Circuit denying such requests are legion. *See, e.g.*, *Jeffries v. Barr*, 965 F.3d 843, 855–56 (D.C. Cir. 2020) (affirming the denial of discovery on six of the plaintiff's seven proposed topics because he failed to show "how the information he seeks would assist him in creating a genuine issue of material fact"); *Turner*, 34 F. Supp. 3d at 137 (denying the plaintiff's request for discovery when he offered "no reasonable basis" that discovery would bear out his claims); *Partridge*, 289 F. Supp. 3d at 19 (D.D.C. 2017) (rejecting the argument that a summary judgment motion was "premature because the parties have not yet engaged in discovery" and stating "a party cannot oppose summary judgment by simply declaring that it wishes to conduct further discovery"). In short, there can be no bias in favor of granting a Rule 56(d) request; "District courts should resolve each request based on its application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *Folliard*, 764

---

[8] Plaintiff suggests obtaining discovery is as simple as requesting it under Rule 56(d), submitting a speculative affidavit, and asking the Court to grant the relief "almost as a matter of course." *See* Pl.'s Opp. Mot. Partial Summ. J. at 6 (citing *Convertino*, 684 F.3d at 99). That is wrong. The D.C. Circuit clarified the "almost as a matter of course" phrase only two years after *Convertino* in *Folliard*, which Plaintiff himself cites. *See id.* at 6 n.3 (citing *U.S. ex rel. Folliard*, 764 F.3d at 26). In *Folliard*, the D.C. Circuit explained that the "almost as a matter of course" descriptor does *not* mean that courts should grant Rule 56(d) requests "routinely" or "more often than not." 764 F.3d at 26–27. The court traced the origin of the "almost as a matter of course" phrasing to a Third Circuit decision and determined, "it is clear that the court made this statement based on the specific facts before it, *and thus was not placing a thumb on the scale in favor of non-movants.*" *Id.* at 27 (emphasis added) (citing *Ward v. United States*, 471 F.2d 667, 670 (3d Cir. 1973)).

F.3d at 26–27. Like in *Folliard*, Plaintiff has fallen well short of satisfying the *Convertino* criteria, and the Court should deny his request for needless delay.[9]

  C. <u>The Court Should Proceed to the Merits and Grant Summary Judgment for Defendants.</u>

Courts properly decide summary judgment on the merits when they determine that the Plaintiff, as here, is not entitled to discovery to oppose the motion. In *Bastin v. Federal National Mortgage Association*, the D.C. Circuit affirmed the district court's grant of summary judgment to the defendant and its denial of the plaintiffs' request for discovery. 104 F.3d at 1393, 1395–96. There, the plaintiffs sued Fannie Mae for allegedly miscalculating the variable interest rate on the plaintiffs' mortgage, bringing claims for breach of contract, fiduciary duty, "and the inevitable RICO violation." *Id.* at 1393. Fannie Mae moved to dismiss the complaint, and the District Court treated the motion as one for summary judgment and granted it with respect to all of the plaintiffs' claims. *Id.* The plaintiffs had alleged that Fannie Mae was required to consult a Federal Reserve Bank hotline or other service provider in setting the variable rate. *Id.* at 1394. But the District Court granted summary judgment to Fannie Mae because the mortgage contract "unambiguously permit[ted]" the calculation method that Fannie Mae had chosen, which used the Federal Reserve Board's weekly rate publications. *Id.* at 1394–95. The plaintiffs had further argued that the District Court erred by denying their request for discovery in light of the conversion of the motion to dismiss into a motion for summary judgment. *Id.* at 1395. But the D.C. Circuit affirmed the denial of discovery, holding that the plaintiffs "were unable to offer anything but rank speculation to support their contention" that discovery would support their claims. *Id.* at 1396.

---

[9] In the event the Court determines that discovery is appropriate, it should be strictly limited to the narrow issue of compliance with the contract provisions related to Compass Coffee's fair market value at the time when Plaintiff stated his intent to pursue a buyout in November 2021. Rule 56(d) contemplates permitting narrow discovery by authorizing the Court to "issue any other appropriate order" in response to a non-movant's affidavit. Fed. R. Civ. P. 56(d)(3).

Here, like in *Bastin*, the Court should decide Defendants' motion for summary judgment without Plaintiff's proposed fishing expedition. Like the terms of the mortgage contract in *Bastin*, there are no genuine disputes about what the Fifth Amended Operating Agreement's buyout provision required. Further, Plaintiff has failed to offer a shred of evidence disputing what Defendants showed in their motion: Robert Haft had no obligations under the buyout provision, Michael Haft complied with his obligation when he and Plaintiff agreed to obtain a fair market valuation from GSG, and Plaintiff does not even argue, must less prove with admissible evidence, that Compass Coffee failed to pay for the valuation, as the buyout provision required. Plaintiff has offered nothing but "rank speculation" to suggest that discovery would create a genuine dispute pertaining to these straightforward facts. The Court should grant summary judgment on Count III in favor of Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants request that the Court enter an order granting summary judgment on Count III in favor of Defendants.

Dated: April 8, 2025

Respectfully submitted,

    */s/ David L. Feinberg*
Michael C. Davis (D.C. Bar No. 485311)
David L. Feinberg (D.C. Bar No. 982635)
Theodore B. Randles (D.C. Bar No. 156339)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
mcdavis@venable.com
dlfeinberg@venable.com
tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC, Michael Haft, and Robert Haft*