**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HARRISON SUAREZ

*Plaintiff,*

v.

COMPASS COFFEE LLC, MICHAEL
HAFT, and ROBERT HAFT

*Defendants.*

Civil Action No. 1:25-cv-89-SLS

---

**DEFENDANT MICHAEL HAFT'S ANSWER AND**
**DEFENSES TO PLAINTIFF HARRISON SUAREZ'S COMPLAINT**

Defendant Michael Haft hereby answers in response to the numbered averments of
Plaintiff Harrison Suarez's ("Mr. Suarez") Complaint and denies all allegations unless expressly
admitted below.

1.    Denied.

2.    Michael Haft denies that he and Mr. Suarez formed the idea to start a coffee business
in the Marines.  The remainder of Paragraph 2 is admitted.

3.    Michael Haft admits that he and Mr. Suarez launched Compass Coffee in 2013 and
opened their flagship roastery in the Shaw neighborhood of Washington, D.C. in 2013.  The
remainder of Paragraph 3 is denied.

4.    Michael Haft lacks knowledge or information sufficient to form a belief about the
truth of the allegations contained in Paragraph 4 and on that basis denies them.

5.    Denied.

6.    Michael Haft admits that in 2021, he emailed Mr. Suarez with options for how Mr.
Suarez's relationship with Compass Coffee could proceed but denies that the email was without

warning.  The remaining allegations in Paragraph 6 are denied.

7.    Michael Haft admits that Compass Coffee obtained approximately $10.5M in Covid relief funds, which were designed to help businesses during the economic downturn that Covid caused but denies that the Hafts personally obtained those monies and denies those funds were misused.  The remaining allegations of Paragraph 7 are denied.

8.    Michael Haft admits that Mr. Suarez indicated his intent to seek a buyout and participated in a fair market valuation process, but he refused to consummate the buyout following the valuation.  The remainder of Paragraph 8 is denied.

9.    Michael Haft admits that Mr. Suarez indicated his intent to seek a buyout on November 15, 2021 but he refused to consummate that transaction.  The remainder of Paragraph 9 is denied.

10.    Denied.

11.    Michael Haft admits that the independent fair market valuation valued Mr. Suarez's Units at less than $200,000.  The remainder of Paragraph 11 is denied.

12.    Denied.

13.    Michael Haft lacks knowledge or information sufficient to form a belief about whether Mr. Suarez has been repeatedly contacted by lenders and therefore denies that allegation. The remainder of Paragraph 13 is denied.

14.    Denied.

15.    To the extent the allegations in Paragraph 15 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.  The remainder of Paragraph 15

is denied.

16.    Denied.

17.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 17 and on that basis denies them.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Michael Haft admits that he and Mr. Suarez were the co-founders of Compass Coffee. The remainder of Paragraph 21 is denied.

22.    The allegations of Paragraph 22 state a legal conclusion to which no response is required.  To the extent a response is required, Michael Haft admits Mr. Suarez purports to bring this action under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 28 U.S.C. § 1331, but denies that the statute applies to business disputes like this case and denies that Mr. Suarez has stated a valid claim under the statute.

23.    The allegations of Paragraph 23 state a legal conclusion to which no response is required.  To the extent a response is required, Michael Haft denies that the Court should exercise supplemental jurisdiction over Mr. Suarez's state-law claims.

24.    The allegations of Paragraph 24 state a legal conclusion to which no response is required.  To the extent a response is required, Michael Haft states that he does not currently contest venue in this Court.

25.    Admitted.

26.    Michael Haft lacks knowledge or information sufficient to form a belief about whether Mr. Suarez embedded with the Afghan National Army in the Helmand Province and was

responsible for advising approximately 200 Afghan soldiers on combat tactics and logistics.  The remainder of Paragraph 26 is admitted.

27.     Admitted.

28.     Admitted that an entity where Robert Haft is manager loaned money to Michael Haft and Mr. Suarez to buy a house together in North Carolina.  The remainder of Paragraph 28 is admitted.

29.     Michael Haft admits that he and Mr. Suarez produced an e-book and were featured in *The New York Times*, *The Atlantic*, *National Public Radio*, and other publications.  Michael Haft further admits that he and Mr. Suarez formed their first LLC, HaftSuarez, and each owned 50% of it.  The remainder of Paragraph 29 is denied.

30.     Michael Haft admits that he and Mr. Suarez contracted with Story Ark to design the brand that became Compass Coffee.  Michael Haft further admits that he and Mr. Suarez formed Compass Coffee as a Delaware LLC in November 2013.  The remainder of Paragraph 30 is denied.

31.     Michael Haft denies that Robert Haft had business holdings in Crown Books, Vitamins.com, Trak Auto, Shoppers Food Warehouse, Combined Properties, and Dart Group Corporation at the time of the development of Compass Coffee.  Michael Haft admits that an entity where Robert Haft served as manager supported the initial development of Compass Coffee through funding but denies that Robert Haft was engaged in management.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 31 and on that basis denies them.

32.     Michael Haft admits that Robert Haft was available to give him and Mr. Suarez business advice.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 32 and on that basis denies them.

33.     Admitted.

34.     Admitted.

35.     Michael Haft admits that Mr. Suarez did not take compensation out of Compass Coffee from 2013 to 2018.  Michael Haft lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 35 and on that basis denies them.

36.     Michael Haft admits that Compass Coffee achieved some success in the years prior to the Covid pandemic and that Compass Coffee received positive press and feedback.  The remainder of Paragraph 36 is denied.

37.     Admitted.

38.     Michael Haft admits that Compass Coffee developed a consumer-packed goods business but denies that it proved profitable.  The remainder of Paragraph 38 is denied.

39.     Michael Haft admits that he and Mr. Suarez met with the chief executive of Starbucks but denies that he and Mr. Suarez were courted by Nestlé USA.  Michael Haft lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 39 and on that basis denies them.

40.     Michael Haft admits that its first Operating Agreement shows that he and Mr. Suarez each made cash contributions of $100,000 and personally held percentage interests of 25% each. Other interests were also shown in the Operating Agreement.  Michael Haft lacks knowledge or information sufficient to form a belief about what Mr. Suarez believed regarding the quantum of ownership of Compass Coffee but denies that this belief as alleged was reasonable.  Michael Haft admits that he and Mr. Suarez were member-managers of Compass Coffee.  The last sentence of Paragraph 40 is a legal conclusion to which no response is required.  Michael Haft lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 40 and on that

basis denies them.

41. Michael Haft admits that the remaining 50% of Compass Coffee LLC was owned by Colby Bartlett LLC and that Robert Haft is the Managing Partner of Colby Bartlett LLC and signed Compass Coffee's first operating agreement on behalf of the entity. The remainder of Paragraph 41 is denied.

42. Michael Haft denies that Colby Bartlett LLC was only 4% owned by Robert Haft and that Michael Haft and his siblings owned 96% of Colby Bartlett LLC. Michael Haft denies that he owned a significantly larger share of Compass Coffee than Mr. Suarez from the beginning of the business and that Michael and Robert Haft concealed Michael Haft's ownership. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 42 and on that basis denies them.

43. Michael Haft admits that Robert Haft renamed MHaft LLC to Octa LLC and that Colby Bartlett LLC transferred its interest in Compass Coffee to Octa LLC and Hexad LLC. Michael Haft further admits that Octa LLC was fully owned by Michael Haft in 2015 but denies that Octa LLC is currently 100% owned by Michael Haft. Michael Haft denies that he held a 75% interest in Compass Coffee and Mr. Suarez held a 25% interest. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 43 and on that basis denies them.

44. Denied.

45. Michael Haft admits that he sent an email to Mr. Suarez on September 9, 2012. To the extent the allegations in Paragraph 45 purport to summarize that email, Michael Haft states that the email speaks for itself. Michael Haft denies any characterization or description that is inconsistent therewith. Michael Haft lacks knowledge or information sufficient to form a belief

about the truth of the allegations summarized in the alleged November 21, 2013 email and on that basis denies them. The remainder of Paragraph 45 is denied.

46.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 46 and on that basis denies them.

47.    Denied.

48.    Michael Haft admits that Robert Haft was the signatory for Colby Bartlett LLC in the first operating agreement and for Colby Bartlett LLC and Octa LLC in the second and third operating agreements. The remainder of Paragraph 48 is denied.

49.    Michael Haft admits that the capital contribution table in the first Compass Coffee Operating Agreement shows ownership percentages as follows: Suarez 25%; Michael Haft 25%; and Colby Bartlett, LLC 50%. Michael Haft further admits that the capital contribution table in the Compass Coffee First Amended Operating Agreement shows ownership percentages as follows: Suarez 25%; Michael Haft 25%; and Octa LLC 50%. The remainder of Paragraph 49 is denied.

50.    Michael Haft admits that Michael Haft, Robert Haft, and Mr. Suarez communicated by phone and email with attorneys regarding the Compass Coffee operating agreements from November 2013 to March 2014, and in January 2016. Michael Haft further admits that Michael Haft, Mr. Suarez, and attorneys held a conference call on January 13, 2014, but denies that Robert Haft was present. Michael Haft also admits that Robert Haft emailed Michael Haft and Mr. Suarez the draft First Amended Operating Agreement on January 14, 2016. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 50 and on that basis denies them.

51.    Michael Haft denies that he regularly said to Mr. Suarez that they were equal partners. Michael Haft admits that Michael Haft and Mr. Suarez had conversations about how an engagement

might affect Compass Coffee but denies that he confronted Mr. Suarez and denies the characterization of the conversation. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 51 and on that basis denies them.

52.     Michael Haft denies that he and Robert Haft made repeated misrepresentations and fraudulent omissions and that he and Mr. Suarez shouldered equal burdens. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 52 and on that basis denies them.

53.     Michael Haft admits that Mr. Suarez worked full-time for Compass during certain time periods, including periods during which he was not paid a salary. Michael Haft further admits that Mr. Suarez contributed $100,000 to Compass Coffee in 2019. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 53 and on that basis denies them.

54.     Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 54 and on that basis denies them.

55.     Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 55 and on that basis denies them.

56.     Michael Haft admits that Compass Coffee's operating agreement was amended in 2016. To the extent the allegations in Paragraph 56 purport to summarize terms of the First Amended Operating Agreement, Michael Haft states that the First Amended Operating Agreement speaks for itself. Michael Haft denies any characterization or description that is inconsistent therewith. The remainder of Paragraph 56 is denied.

57.     Michael Haft admits that Compass Coffee's operating agreement was amended in

2016.  To the extent the allegations in Paragraph 57 purport to summarize terms of the First Amended Operating Agreement, Michael Haft states that the First Amended Operating Agreement speaks for itself.  Michael Haft denies any characterization or description that is inconsistent therewith.  The remainder of Paragraph 57 is denied.

58.     Michael Haft denies that he or Robert Haft made misrepresentations about the operating agreement.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 58 and on that basis denies them.

59.     Michael Haft denies that Mr. Suarez assigned his 50% interest in the Compass brand to Compass Coffee LLC for no consideration or that HaftSuarez LLC had owned the Compass brand. Michael Haft admits that, on August 2, 2018, Mr. Suarez and Michael Haft assigned all of HaftSuarez LLC's assets to Compass LLC but denies that the assignment included an ownership of the Compass brand.  Michael Haft denies that the logo design was valued at $34 million by a Haft family accountant.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 59 and on that basis denies them.

60.     Michael Haft denies that Mr. Suarez assigned away his interest in the Compass Coffee brand.  Michael Haft denies that he admitted to concealing his ownership of Octa LLC. Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 60 and on that basis denies them.

61.     Michael Haft denies that he and Robert Haft lied to or manipulated Mr. Suarez and denies that they intended for Mr. Suarez to relinquish his ownership and authority in Compass Coffee.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 61 and on that basis denies them.

62.     To the extent the allegations in Paragraph 62 purport to summarize terms of the First

Amended Operating Agreement, Michael Haft states that the First Amended Operating Agreement speaks for itself. Michael Haft denies any characterization or description that is inconsistent therewith. The remainder of Paragraph 62 is denied.

63.    Denied.

64.    Admitted.

65.    Michael Haft admits that he was the company's Chief Financial Officer in 2020. The remainder of paragraph 65 is denied.

66.    The first and second sentences are admitted. The third sentence is denied as Compass Coffee could use the funds for any purposes permitted under the terms of the various payments and under applicable law.

67.    Michael Haft admits the allegations in Paragraph 67 except that Compass Coffee began 2021 with approximately $1.18 million in cash on hand without reflecting encumbrances.

68.    Admitted.

69.    Admitted.

70.    Michael Haft admits that Compass Coffee received funds under PPP2 but avers that the amount was $1,816,863.30 and that the funds were received in March 2021.

71.    Michael Haft admits that Compass Coffee received funds in May 2021 from the Restaurant Revitalization Fund but avers that the amount was $6,852,586.70.

72.    Admitted.

73.    Admitted.

74.    Denied.

75.    Denied.

76.    Admitted but denied that this is a comprehensive or exhaustive description of the PPP

loans or their permitted uses.

77.    Denied.

78.    Denied.

79.    Denied.

80.    Denied.

81.    Michael Haft denies that Robert Haft was engaged in the management of Compass Coffee's affairs.  Michael Haft denies that Compass Coffee used Covid relief funds for any improper unpermitted purpose.  Michael Haft admits Compass Coffee used certain Covid relief money for working capital to keep the business afloat and for other permissible purposes.  Michael Haft admits he and other Compass Coffee employees were interviewed in a video published online by the SBA. The remainder of Paragraph 81 is denied.

82.    Admitted.

83.    Michael Haft admits that, in 2021, Mr. Suarez was negotiating a payment plan with Compass Coffee's landlord at 1401 Okie Street NE.  Michael Haft also admits that, in mid-2021, he took over that negotiation at the landlord's request but denies that he announced that he would take over that negotiation.  Michael Haft denies that he informed Mr. Suarez that Compass Coffee was going to start paying its full rent on that location.

84.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 84 and on that basis denies them.

85.    Michael Haft admits that paying rent was one of the permitted purposes of the SBA loans but not the only purpose and denies that Robert Haft was involved in paying rent.  Michael Haft also denies that it was unknown to Mr. Suarez that Compass Coffee was behind on some rent. Michael Haft admits that Compass Coffee paid $10,000 each month on a monthly rent bill in April,

May, and June of 2021, but denies that the monthly rent bill was $100,626.73.  Michael Haft admits

that Compass Coffee owed money to its landlord in January 2022 but denies that the amount owed

was $1,418,597.29.  The remainder of Paragraph 86 is denied.

86.     Michael Haft admits that Compass Coffee received RRF funds in May 2021 and that,

in July 2021, the Washington Business Journal published an article stating that local businesses had

been approved for RRF grant funds, that Compass Coffee had been approved for RRF grant funds,

and that Michael Haft had said that Compass is still waiting on the funds to be disbursed.  Michael

Haft lacks knowledge or information sufficient to form a belief about whether he told the reporter

that Compass had not received the SBA funds or whether the reporter made a mistake.  The

remainder of Paragraph 86 is denied.

87.     Michael Haft admits that Mr. Suarez was named in a lawsuit brought by Jemal's

Pappas Tomato's LLC, which lawsuit Compass Coffee contested and ultimately settled.  The

remainder of Paragraph 87 is denied.

88.     Michael Haft lacks knowledge or information sufficient to form a belief about the

truth of the allegations contained in Paragraph 88 and on that basis denies them.

89.     Michael Haft admits that Compass Coffee and Eagle Bank had to work through

issues with Compass Coffee's loan due to diminished collateral because of the Covid pandemic and

for other reasons.  Michael Haft lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations contained in Paragraph 89 and on that basis denies them.

90.     Denied.

91.     Admitted.

92.     Michael Haft admits that Compass Coffee's PPP loans were forgiven in full.  The

remainder of Paragraph 92 is denied.

93.    Denied.

94.    Michael Haft denies any wrongdoing.  Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 94 and on that basis denies them.

95.    Michael Haft denies any wrongdoing.  Michael Haft admits a conversation occurred between him and Mr. Suarez but avers that the letter referred to was delivered in April 2021.  The remaining allegations of Paragraph 95 are denied.

96.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 96 and on that basis denies them.

97.    Michael Haft admits that he sent Mr. Suarez an email on July 19, 2021, which Paragraph 97 purports to quote.  The remainder of Paragraph 97 is denied.

98.    Michael Haft admits that he informed Mr. Suarez not to come to Compass Coffee's office after Mr. Suarez's termination and removed Mr. Suarez's access to certain Compass Coffee systems, including Trello, but denies that he locked Mr. Suarez out of Compass Coffee's office. Michael Haft also admits that, at Mr. Suarez's direction, he informed others that Mr. Suarez had voluntarily left Compass Coffee to work on a software project.

99.    Michael Haft admits that Mr. Suarez continued to perform tasks after July 19, 2021. The remaining allegations of Paragraph 99 are denied.

100.    To the extent the allegations in Paragraph 100 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

101.    Admitted.

102.    To the extent the allegations in Paragraph 102 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

103.    To the extent the allegations in Paragraph 103 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

104.    To the extent the allegations in Paragraph 104 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

105.    Michael Haft admits that Mr. Suarez held 114,305 Units in Compass Coffee but denies that they comprised 10.96% of Compass Coffee.  To the extent the allegations in Paragraph 105 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

106.    Michael Haft admits that Mr. Suarez emailed him and Robert Haft on November 15, 2021.  The remainder of Paragraph 106 states a legal conclusion to which no response is required.  To the extent a response is required, Michael Haft denies the remaining allegations.

107.    To the extent the allegations in Paragraph 107 purport to summarize emails on or around December 3, 2021, Michael Haft states that those emails speak for themselves.  Michael Haft

denies any characterization or description that is inconsistent therewith.  The remaining allegations of Paragraph 107 are denied.

108.    To the extent the allegations in Paragraph 108 purport to summarize an email on or around December 5, 2021, Michael Haft states that the email speaks for itself.  Michael Haft denies any characterization or description that is inconsistent therewith.  The remaining allegations of Paragraph 108 are denied.

109.    Michael Haft admits that Mr. Suarez sent an email to him and Robert Haft stating that Mr. Suarez was resigning from the Board of Directors of Compass Coffee.  The remaining allegations of Paragraph 109 are denied.

110.    Michael Haft admits that Mr. Suarez followed up with him and participated in the valuation process.  The remaining allegations in Paragraph 110 are denied.

111.    Denied.

112.    Denied.

113.    Michael Haft admits that, in April 2022, Chuck Faunce, a Director, Business Valuation and Litigation Services at Gorfine Schiller Gardyn, prepared a valuation report that was subsequently adopted by Compass Coffee's board.  The remainder of Paragraph 113 is denied.

114.    Admitted.

115.    Michael Haft admits that Mr. Suarez sent an email asking questions of Mr. Faunce, to which Mr. Faunce responded.  To the extent the allegations in Paragraph 115 purport to summarize those emails, Michael Haft states that those emails speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.  Michael Haft denies that Mr. Faunce valued the Compass Coffee brand at $34 million.  The remainder of Paragraph 115 is denied.

116.    Denied.

117.    Denied.

118.    To the extent the allegations in Paragraph 118 purport to summarize the valuation report, Michael Haft states that the valuation report speaks for itself.  Michael Haft denies any characterization or description that is inconsistent therewith.  The remainder of Paragraph 118 is denied.

119.    To the extent the allegations in Paragraph 119 purport to summarize the valuation report, Michael Haft states that the valuation report speaks for itself.  Michael Haft denies any characterization or description that is inconsistent therewith.  The remainder of Paragraph 119 is denied.

120.    Denied.

121.    Denied.

122.    Michael Haft denies that any formal or binding offer was made and denies that that any formal valuation was performed.  However, without taking the devasting impacts of COVID into account, Michael Haft admits that, on February 7, 2020, an investment firm stated it might be willing to explore offering, subject to various agreements, contingencies and issues which had not been resolved, to potentially acquire 14.5% of Compass Coffee for an amount which could potentially be in the range of $10 million.  The remainder of Paragraph 122 is denied.

123.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 123 and on that basis denies them.

124.    Michael Haft admits that Compass Coffee had 6 cafés in operation as of January 2021 and that it has more than 20 cafés currently but denies that implies a per-café valuation of $12.5 million.  The remainder of Paragraph 124 is denied.

125.    Denied.

126.    Michael Haft denies that, in 2021, he provided financial data in 2022 to GSG indicating that Compass Coffee earned $2.184 million.  Michael Haft admits that Compass Coffee's consumer-packaged goods products were in approximately 30 stores in 2021 and that, by 2022, Compass Coffee was onboarding its products to more than 250 stores, including Whole Foods and Giant.  The remainder of Paragraph 126 is denied.

127.    Denied.

128.    Denied.

129.    Michael Haft incorporates by reference his responses to each and every allegation in the preceding paragraphs.

130.    The allegations in Paragraph 130 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

131.    The allegations in Paragraph 131 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

132.    Denied.

133.    The allegations in Paragraph 133 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

134.    The allegations in Paragraph 134 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

135.    Denied.

136.    Denied.

137.    Admitted.

138.    Denied.

139.    Michael Haft admits that Robert Haft was available to help him and Mr. Suarez as

they launched Compass Coffee and wished for Compass Coffee to succeed. Michael Haft admits that Robert Haft asked a lawyer to draft Compass Coffee's Second Operating Agreement. Michael Haft denies that the Second Operating Agreement remained in effect after entry of the Third, Fourth, and Fifth Operating Agreements. The remainder of Paragraph 139 is denied.

140.    Michael Haft admits that Compass Coffee obtained $10.5 million in Covid relief funding from the SBA. The remainder of Paragraph 140 is denied.

141.    Denied.

142.    Denied.

143.    The allegations in Paragraph 143 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

144.    Michael Haft admits that Compass Coffee and Union Kitchen have locations in Virginia as well as the District of Columbia, as well as consumer packaged goods businesses. The remainder of Paragraph 144 is denied.

145.    Michael Haft admits that on or about October 1, 2020, Octa LLC transferred its legal interests in its shares of Compass Coffee to Michael Haft but denies that the transfer included voting rights of the shares. Michael Haft admits that in 2020, Four Properties LLC sold its shares in Union Kitchen to Colby Bartlett and Hexad but denies that Four Properties LLC sold its shares in Union Kitchen to Michael Haft. The remainder of Paragraph 145 is denied.

146.    The allegations in Paragraph 146 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

147.    The allegations in Paragraph 147 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

148.    The allegations in Paragraph 148 contain legal conclusions to which no response is

necessary. To the extent a response is required, Michael Haft denies the allegations.

149. The allegations in Paragraph 149 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

150. The allegations in Paragraph 150 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

151. The allegations in Paragraph 151 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

152. The allegations in Paragraph 152 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

153. The allegations in Paragraph 153 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

154. The allegations in Paragraph 154 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

155. The allegations in Paragraph 155 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

156. The allegations in Paragraph 156 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

157. The allegations in Paragraph 157 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

158. The allegations in Paragraph 158 contain legal conclusions to which no response is necessary. To the extent a response is required, Michael Haft denies the allegations.

159. Denied.

160. Denied.

161.    The allegations in Paragraph 161 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft admits only that Mr. Suarez has personal guarantees on certain Compass Coffee debt and is at present a Compass Coffee shareholder. Michael Haft denies that he engaged in any racketeering and denies the remaining allegations of Paragraph 161.

162.    Denied.

163.    The allegations in Paragraph 163 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

164.    Denied.

165.    The allegations in Paragraph 165 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

166.    Denied.

167.    Michael Haft incorporates by reference his responses to each and every allegation in the preceding paragraphs.

168.    Denied.

169.    Denied.

170.    Michael Haft lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 170 and therefore denies them.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Michael Haft incorporates by reference his responses to each and every allegation in

the preceding paragraphs.

176.   Admitted.

177.   Admitted.

178.   Denied.

179.   Denied.

180.   Denied.

181.   Denied.

182.   To the extent the allegations in Paragraph 182 purport to summarize terms of the Fifth Operating Agreement, Michael Haft states that the terms set forth therein contain the full and accurate terms of the Fifth Operating Agreement which speak for themselves.  Michael Haft denies any characterization or description that is inconsistent therewith.

183.   Denied.

184.   Michael Haft admits he is contractually obligated to abide by Section VI.10 of the Fifth Operating Agreement but denies he failed to do so and denies the remaining allegations of Paragraph 184.

185.   Michael Haft admits that Mr. Suarez seeks money damages from Defendants but denies that Mr. Suarez is entitled to any damages and denies the remaining allegations of Paragraph 185.

186.   Michael Haft incorporates by reference his responses to each and every allegation in the preceding paragraphs.

187.   Michael Haft admits that the parties thereto entered into the Fifth Amended Operating Agreement on or about November 10, 2020.  Michael Haft denies that Robert Haft is a party thereto.

188.   Michael Haft admits for the parties thereto but denies that Robert Haft is a party

thereto.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Michael Haft incorporates by reference his responses to each and every allegation in the preceding paragraphs.

193.    The allegations in Paragraph 193 contain legal conclusions to which no response is necessary.  To the extent a response is required, Michael Haft denies the allegations.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

Mr. Suarez's prayer for relief (i.e., beginning with the word "WHEREFORE") requires no response.  Mr. Suarez's Prayer for Relief states legal conclusions and his characterizations of this action, with which Michael Haft disagrees and to which no response is required.  To the extent a response to Mr. Suarez's prayer for relief is required, Michael Haft denies that Mr. Suarez is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Michael Haft states the following affirmative defenses to Plaintiff's Complaint.  Each defense is asserted as to all claims against Michael Haft.  By setting forth these affirmative defenses, Michael Haft does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  Michael Haft reserves the right to assert any and all defenses allowable by law and/or that may become available, including reserving the right to timely raise such additional affirmative defenses as may be appropriate in

light of the developments in this case.  By listing certain defenses here, Michael Haft does not waive any other defenses that may apply.

1.     Plaintiff has failed to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred by the applicable statute of limitations.

3.     Plaintiff's claims are barred by the doctrine of laches.

4.     Plaintiff lacks standing to bring this action because Plaintiff has not demonstrated a sufficient legal interest of injury in fact.

5.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or unclean hands.

6.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's own failure to satisfy a condition precedent to the contract at issue and/or by Plaintiff's prior material breach of and failure to comply with such contract.

7.     The damages alleged in Plaintiff's Complaint, if any, were caused, in whole or in part, by the acts and/or omissions of Plaintiff, and not by any alleged conduct on the part of Michael Haft.

8.     Plaintiff's claims are barred, in whole or in part, because the Court lacks subject matter jurisdiction.  Plaintiff has failed to state his sole federal claim, the RICO claim, and therefore the Court lacks a basis for federal question jurisdiction.

9.     Michael Haft reserves all affirmative defenses, at law or equity, that may now exist or in the future be available based on discovery and other factual investigation in this case.

## **JURY TRIAL DEMANDED**

Michael Haft demands a trial by jury of all claims and defenses upon which he is entitled to a jury.

Dated: November 17, 2025                      Respectfully submitted,

*/s/ David L. Feinberg*
Michael C. Davis (D.C. Bar No. 485311)
David L. Feinberg (D.C. Bar No. 982635)
Theodore B. Randles (D.C. Bar No. 156339)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
mcdavis@venable.com
dlfeinberg@venable.com
tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC,*
*Michael Haft, and Robert Haft*