IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRISON SUAREZ<br><br>*Plaintiff,*<br><br>v.<br><br>COMPASS COFFEE LLC, MICHAEL HAFT, and ROBERT HAFT<br><br>*Defendants.* | Civil Action No. 1:25-cv-89-SLS |

## JOINT RULE 26(f) REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 16.3, Plaintiff Harrison Suarez ("Plaintiff") and Defendants Compass Coffee LLC ("Compass"), Michael Haft, and Robert Haft (together, the "Defendants") submit the following Joint Report. By mutual agreement, the Parties conferred on November 21, 2025 about the topics identified in Federal Rule 26(f)(3) and Local Rule 16.3, further conferred via e-mail, and reached the following agreements concerning those matters.

**I.      Statement of the Case/Statutory Basis**

Plaintiff's position: This suit challenges the Haft Family Enterprise's pattern of defrauding business partners and others to unlawfully enrich themselves, including through misuse of government Covid relief funding. Plaintiff brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) & (d), fraud, breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty of loyalty and care.

Plaintiff Harrison Suarez and Defendant Michael Haft co-founded Compass Coffee LLC in 2013. They each made initial investments to launch the company, purportedly for equal 25% shares of the business. In fact they did not have equal shares. Michael and his father Robert

constructed a web of LLCs, through which they funneled their investments into Compass, concealing Michael's majority ownership, all while continuing to represent to Harrison that he was an equal partner in the business. Relying on that misrepresentation, Harrison worked hard building the company—for the most part completely uncompensated—and shouldered risk alongside Michael by guaranteeing Compass's debts and leases. After many years of Harrison helping build the brand into an enormously valuable asset—valued at $34 million as of 2020—Defendants induced Harrison to sign it over to Compass for no consideration at all. Defendants ultimately forced Harrison out of the company entirely in 2021. Harrison attempted to exercise his contractual right, as a co-founder of the business, to a buyout of his shares in Compass Coffee LLC, but Defendants have obstructed the process mandated by Compass's Operating Agreement and refused to effectuate the buyout. While Defendants now claim Compass is on the verge of bankruptcy, they have opened at least four new cafes in 2025 alone, for a total of 25—and claimed a valuation of $75 million when there were only six.

Harrison later learned that the Hafts' fraud extended beyond these events. In 2020 and 2021, as the government was trying to help small businesses struggling as a result of the global Covid-19 pandemic, the Hafts obtained $10.5 million for Compass in government Covid relief funds, which were designed to help businesses retain and/or re-hire workers, pay rent, and otherwise stay afloat during a challenging time. Instead, unbeknownst to Harrison, the Hafts used that money to pre-pay their own loans to Compass and make risky investments—prohibited uses of the funds—all while failing to pay their rent and other bills. Harrison has since been personally sued for Compass's default, and faces possible legal action from numerous other defaulted debts. While Defendants claim they offered to pay Plaintiff's legal bills, in truth, Plaintiff sought the reimbursement he was entitled to but never received it.

Defendants' position: This case concerns a series of business disputes concerning Compass Coffee. Plaintiff and Defendant Michael Haft co-founded Compass. Michael Haft's father Defendant Robert Haft, through his business entities, invested millions of dollars into Compass.

Several years ago, Plaintiff and Michael Haft had a falling out and parted ways. Plaintiff informed Compass that he wanted to sell to it his 10% ownership interest, which is an option under the Compass operating agreement. Plaintiff and Michael jointly selected a firm to calculate the fair market value of Plaintiff's shares in late 2021. Plaintiff provided input into the firm's fair market valuation, that valuation was independently verified, Plaintiff was disappointed with the sale price (approximately $163,433), and Plaintiff decided against exercising the option to sell.

The valuation took place in the wake of the Covid pandemic, which was extremely hard on businesses like Compass. Unfortunately, Compass has financially struggled for years since the pandemic first shut down restaurants and coffee cafes across DC and the world in 2020. Compass is now on the verge of bankruptcy, belying Plaintiff's claims that that his interest in the company was somehow undervalued by millions of dollars. Simply put, the business that Plaintiff contends is booming is now going out of business.

Plaintiff has engaged a series of attorneys to threaten suit, and to file suit, against Compass to push Compass even deeper into the red. Plaintiff's current counsel is his fourth set of attorneys. They allege that the Hafts attempted to swindle from him his 10% interest in the company and, separately, to defraud the government of Covid relief funds. Plaintiff contends that these alleged actions—all of which Defendants deny—constitute violations of the RICO Act. Though Plaintiff's allegations are creatively pleaded, RICO does not apply to business disputes like this one, nor will Plaintiff be able to prove them. Even if the Act did apply, the documents and correspondence that Plaintiff left out of his Complaint show that the Defendants never defrauded, misled, or concealed

any information from Plaintiff, who at all times knew that he was a minority investor and employee of a family business in which the Defendants and their friends and family invested <u>and then lost</u> over $16 million dollars. No one was defrauded. And, while unfortunate, Compass was and is an unprofitable business.

Defendants also never misused any Covid relief funds. Indeed, as was common, the SBA audited Compass on a quarterly basis. The SBA confirmed that the funds lent to Compass were properly applied. Plaintiff's accusation that Compass stole money from the government is wholly unsupported. Plaintiff then doubles down on that accusation by claiming that he was financially harmed by the so-called "Covid relief scheme." He was not. Plaintiff alleges that because Compass missed certain rent payments, one of Compass' landlords sued Plaintiff on a personal guarantee for a lease, and Plaintiff incurred about $7,000 in attorneys' fees defending against the suit. But Plaintiff leaves out of his Complaint that for years Compass offered to pay Plaintiff the $7,000 and Plaintiff repeatedly refused.

In sum, the documents and correspondence exchanged between the parties show that Plaintiff's allegations of fraud, a "racketeering enterprise," and other sensational claims are factually and legally baseless, born out of a grudge. They are also years old and are therefore time-barred under the applicable statutes of limitations. Defendants are eager to clear their names as soon as possible and request a case schedule that permits them to do so in a reasonably expeditious manner.

**II.     Discovery Plan as Described in Federal Rule of Civil Procedure 26(f)(3)**

**26(f)(3)(A) what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

The Parties have agreed to exchange initial disclosures under Rule 26(a)(1) by December 16, 2025. The Parties do not propose any changes to the requirements of Rule 26(a)(1) regarding the scope or form of initial disclosures.

**26(f)(3)(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

Plaintiff's position: Plaintiff submits that the subjects for discovery include the formation, financial structure, and operating agreements of Compass Coffee (including communications among Defendants and others that Plaintiff was not privy to); Defendants' loans and investments in Compass Coffee and the LLCs they used for those transactions; Defendants' applications for and uses of government Covid relief funds; and the valuation and finances of Compass Coffee, including representations about Compass Coffees' valuation made to potential investors.

Plaintiff submits that discovery should be completed on June 5, 2026, in accordance with the Complex Case discovery schedule shown in Appendix I to the Court's November 18, 2025 order. The case involves a RICO claim (among four others), and two alleged schemes spanning nearly a decade, and will require extensive fact-gathering, including robust third-party and expert discovery to ascertain the true valuation of Compass. Civil RICO claims are one of six categories of claims that the Federal Judicial Center's Manual for Complex Litigation defines as complex. *See* Manual for Complex Litigation (Fourth Ed.) at ch. 35 (explaining that courts have characterized the civil RICO statute as "complicated" and "agonizingly difficult," and

5

acknowledging that "[l]itigation under the statute is often time-consuming and burdensome . . .").[1] Many courts have similarly commented on RICO's complexity. *See, e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 456 (1990) (acknowledging the "complexities of civil RICO actions"); *Jennings v. Emry*, 910 F.2d 1434, 1435 (7th Cir. 1990) ("RICO is a complex statute, it is true."); *Jericho Baptist Church Ministries, Inc. (D.C.) v. Jericho Baptist Church Ministries, Inc. (Maryland)*, 223 F. Supp. 3d 1, 8 (D.D.C. 2016) ("RICO is a complex statute."); *Long v. Zhuang*, No. 22-CV-1293, 2024 WL 4250308, at *6 (E.D.N.Y. Aug. 8, 2024) (discussing RICO's "inherent complexity").

While Plaintiff of course intends to be judicious and efficient in pursuing the discovery he needs to prove his claims, he anticipates needing to subpoena—at the very least—the Small Business Administration, Compass's financial institutions, Compass's landlords, and key current and former Compass employees who have direct knowledge of Compass's use of SBA funds, valuation and financial condition, and the Hafts' LLCs. Adopting the Complex Case schedule would allow sufficient breathing room to pursue this nonparty discovery, which often takes longer than party discovery, particularly if Plaintiff is required to litigate motions to compel or motions to quash in other federal courts. In addition, contrary to Defendants' assertion that the parties have already exchanged many of the relevant documents, Defendants have continued to improperly construe the case as a narrow business dispute, ignoring the scope of Plaintiff's allegations, as well as the need for discovery into things that were concealed from Plaintiff since the inception of Compass Coffee, on top of the third-party and expert discovery already noted. Plaintiff agrees with Defendants that there is no need for discovery to take place in phases.

Defendants' position: Defendants contend that this case fits the standard discovery track. Also, the parties already have exchanged many of the relevant documents and communications.

---

[1] *Available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

Before the Scheduling Conference, Defendants will have already voluntarily begun to produce to Plaintiff copies of the documents that are relevant to the parties' claims and defenses, weeks before any deadline to begin that production, so that there is no dispute that the information has been formally exchanged and bates-labeled, so the parties may swiftly move the case forward, including to dispositive motions.

The subjects of the relevant documents and communications reflect the knowledge that Plaintiff possessed of Compass and its ownership structure, Defendants' investments into the business, the terms of those investments, and the timing of those investments. The subjects also include the valuation of Plaintiff's ownership interest in the business, his participation in the valuation of that interest, the independent verification of that valuation, and Plaintiff's decision not to sell. The subjects also include the quarterly audits that the SBA conducted of Compass, which demonstrated that Compass property applied the SBA funds. The subjects also include Plaintiff's correspondence with Compass, in which he refused to permit Compass to pay for his attorneys' fees incurred in connection with the landlord-tenant suit that he claims financially harmed him. None of this requires extensive third-party discovery.

Consistent with the proposed discovery schedule below, Defendants submit that discovery should be completed on the standard track by April 23, 2026. Defendants do not request that discovery take place in phases. Defendants do believe that because Compass will likely file bankruptcy in December 2025 and that the bankruptcy court will issue an automatic stay as to Plaintiffs' claims against Compass for some period. Defendants have no objection to discovery continuing among the other parties while the claims against Compass are stayed or otherwise are ruled on, and/or potentially disposed of, by the bankruptcy court. The bankruptcy may also streamline this case. Among other things, the bankruptcy proceedings will make public such topics

as Compass' value and finances (on which Plaintiff seeks discovery), will likely take up certain of Plaintiff's claims against Compass, and will at a minimum likely render Plaintiff's 10% ownership interest valueless due to Compass' significant debt and other obligations that take priority over Plaintiff's unsecured and unproven claim.

Defendants want to clear their names as soon as possible. Defendants believe that discovery should focus on the topics described above. Defendants are concerned that Plaintiff will go on a fishing expedition well beyond relevant topics and attempt to undertake widespread discovery of Defendant Robert Haft's businesses that are unrelated to the allegations in the Complaint. For example, Plaintiff has already served discovery requesting Mr. Haft's tax returns and the tax returns of certain of Mr. Haft's business entities. That discovery is not relevant to the claims and defenses pleaded. Mr. Haft may seek a protective order from the Court if warranted after meeting and conferring with Plaintiff's counsel.

**26(f)(3)(C) any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

The Parties do not anticipate any issues about disclosure, discovery, or preservation of electronically stored information.

**26(f)(3)(D) any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

The Parties are negotiating a stipulated protective order, which they intend to submit for the Court's approval.

**26(f)(3)(E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

<u>Plaintiff's position</u>: Consistent with the complex case track, Plaintiff proposes that the parties be limited to 25 interrogatories each and 10 depositions. 5 depositions (the number allotted

8

on the simple case track) would be insufficient for this matter; even at this early stage, Plaintiff anticipates deposing each of the three Defendants, along with key current and former employees and other third parties who have direct knowledge of Compass's use of SBA funds, valuation and financial condition, and the Hafts' LLCs. It is possible that Plaintiff will also determine it is necessary to depose other third parties, as described above. Plaintiff does not have unlimited resources and has no intention of pursuing far-flung, non-essential discovery. His interest is limited to ensuring he has enough latitude to pursue critical information he needs to prove his claims.

<u>Defendants' position</u>: Defendants believe this matter fits the Standard Case discovery schedule shown in Appendix I to the Court's November 18, 2025 order (limiting each party to 25 interrogatories and 5 depositions). For the reasons provided above, Defendants disagree that third party discovery is necessary and is in the process of producing party discovery.

**26(f)(3)(F) any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

The Parties do not identify any such orders at this time.

**III.    Topics Listed in Local Civil Rule 16.3**

**16.3(c)(1): Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

The parties expect to file summary judgment motions after the conclusion of discovery and agree that at least some of the issues in the case may be disposed of on summary judgment.

**16.3(c)(2): The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

The Parties agree to confer after the close of discovery to determine if any factual or legal issues may be stipulated to or narrowed. The Parties further agree that the deadline for any motion to add parties or amend the pleadings should be February 17, 2026.

**16.3(c)(4): Whether there is a realistic possibility of settling the case.**

Plaintiff's position: The parties have discussed the possibility of settlement, and although Plaintiff remains open to and would welcome further conversations, he is not optimistic about the prospect of settlement in the near term based on the discussions to-date and believes that the case should proceed to discovery at this time.

Defendants' position: Defendants believe the case is amenable to settlement. It is willing to engage in settlement discussions at any time, with or without counsel being involved.

**16.3(c)(5): Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients. In assessing the above, counsel shall consider:**

  i. **the client's goals in bringing or defending the litigation;**
  ii. **whether settlement talks have already occurred and, if so, why they did not produce an agreement**
  iii. **the point during the litigation when ADR would be most appropriate, with special consideration given to:**
      **(aa) whether ADR should take place after the informal exchange or production through discovery of specific items of information; and**
      **(bb) whether ADR should take place before or after the judicial resolution of key legal issues;**
  iv. **whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, an assessment of damages and/or the potential settlement value of the case; and**
  v. **whether cost savings or any other practical advantages would flow from a stay of discovery or of other pre-trial proceedings while an ADR process is pending.**

Plaintiff's position: As noted above, Plaintiff is always open to engaging in good faith in settlement/alternative dispute resolution processes, but at least based on discussions to-date, does not believe ADR would be productive at this time.

Defendants' position: Defendants believe the case is amenable to ADR, including neutral evaluation, mediation, or other ADR procedures. It is willing to engage in ADR at any time, with or without counsel involved.

**16.3(c)(6): Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

Plaintiff's position: Plaintiff may move for summary judgment on some or all of his claims, and agrees the case may be resolved at least in part by summary judgment. Plaintiff proposes the following dates for summary judgment, oppositions, and replies:

| Event | Deadline |
|---|---|
| Summary Judgment Opening Brief(s) | July 3, 2026 (approx. 30 days after close of discovery) |
| Summary Judgment Opposition Brief(s) | July 31, 2026 |
| Summary Judgment Reply/Replies | August 14, 2026 |
| Proposed Date for Ruling(s) on Dispositive Motions | L.R. Civ. R. 16.3(c)(6) contemplates including this date; Plaintiff defers to the Court but is happy to propose a date if the Court would like |

Defendants' position: Defendants, or some subset of Defendants, will move for summary judgment. Defendants propose the following dates for summary judgment, oppositions, replies, and a date for decision, which are consistent with the deadlines in the local rules.

| Event | Deadline |
|---|---|
| Summary Judgment Opening Brief(s) | May 25, 2026 |
| Summary Judgment Opposition Brief(s) | June 8, 2026 |
| Summary Judgment Reply/Replies | June 15, 2026 |
| Proposed Date for Ruling(s) on Dispositive Motions | As soon as the Court is able to render a decision |

11

**16.3(c)(7): Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

The Parties agree to December 16, 2026 as the deadline for initial disclosures and do not suggest any changes to the disclosures' scope, form, or timing.

**16.3(c)(8): The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

Plaintiff's position: Plaintiff proposes that discovery be completed by June 5, 2026, approximately the date dictated by this Court's complex case track, and that the scope of discovery should be governed by the applicable Federal and Local Rules. The parties have included competing proposed schedules below for the Court's consideration. Plaintiff disagrees with Defendants' position that they "have already exchanged virtually all the relevant documents and communications." Defendants continue to construe this as a narrow business dispute about the value of Plaintiff's shares in Compass, but that is not accurate; the allegations implicate a broader array of conduct and information, including documents and communications that Plaintiff was not privy to, even while working at Compass. Defendants' offer of "expedited production" similarly was predicated on the notion that discovery will involve little more than re-exchanging documents that the parties have already exchanged, which is insufficient; a formal discovery process is necessary. Plaintiff has no intention to attempt to undertake "abusive discovery" or "discovery . . . unrelated to the allegations in the Complaint," but he does intend to exercise his rights to seek fulsome discovery that is relevant to the claims and defenses in this case, from both parties and third parties, and in a manner that is both efficient and thorough.

Defendants' position: The parties were closely associated with the same business, corresponded frequently, and enjoyed access to virtually all the same documents.  Throughout the

course of their years-long relationship they have already exchanged virtually all the relevant documents and communications. Defendants are willing to expedite production of documents and information relevant to the parties' claims and defenses (meaning all of the claims and defenses, not some mere subset) so that there is no dispute that the information has been exchanged and bates-labeled, so the parties may swiftly move to dispositive motions. Defendants will have begun voluntary production of documents and communications to Plaintiff before the December 17, 2025 Scheduling Conference. Consistent with the proposed discovery schedule below, discovery can be completed on the standard track by April 23, 2026.

As stated above, Defendants are concerned that Plaintiff will attempt to extend discovery into Defendant Robert Haft's businesses that are unrelated to the allegations in the Complaint. For example, Plaintiff has already served discovery requesting Mr. Haft's tax returns and the tax returns of certain of Mr. Haft's business entities. That discovery is not relevant to the claims and defenses pleaded. Mr. Haft may seek a protective order from the Court if warranted after meeting and conferring with Plaintiff's counsel.

**16.3(c)(9): Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

None.

**16.3(c)(10): Any issues about claims of privilege or of protection as trial-preparation materials, including – if the parties agree on a procedure to assert these claims after production – whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

The parties anticipate proposing a Stipulated Protective Order that contains a "claw back" agreement under Rule of Evidence 502.

**16.3(c)(11): Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2), should be modified, and whether and when depositions of experts should occur.**

The parties agree that the parties will simultaneously serve opening (proponent) expert reports followed by rebuttal reports. The parties disagree on the timing of those disclosures. The parties agree that expert depositions will be conducted during the discovery period.

Plaintiff's position: Plaintiff proposes that proponent expert reports be served on April 16, 2026 (a short extension from the Court's complex case timeline to accommodate competing deadlines and pre-existing travel plans), with rebuttal reports due May 18, 2026. Plaintiff will need to gather significant facts (both via party and third-party discovery) in order to supply experts with sufficient information to allow an accurate analysis of Compass's valuation, particularly in light of his allegations that Defendants have manipulated the inputs used in previous valuation analyses, *see* Compl. ¶¶ 116–27. Plaintiff's proposed deadline builds in time for this critical fact-gathering.

Defendants' position: Defendants propose that proponent expert reports be served on February 16, 2026, with rebuttal reports due March 17, 2026. Although Plaintiff claims that it is "critical" that he take substantial discovery on the value of Compass, Plaintiff's prior counsel already was provided significant information on that valuation, and Plaintiff's prior counsel hired consultants to critique that valuation, which provided the basis for the allegations that Plaintiff pleaded. (Compl. ¶¶ 116–27.) Defendants deny the veracity of those allegations, but for present purposes the "fact-gathering" that Plaintiff claims is "critical" was already completed years ago. Moreover, in all events the value of Compass will also be made public in its impending bankruptcy in which Plaintiff can fully participate as a minority owner of Compass and an alleged unsecured creditor.

**16.3(c)(12): In class actions, appropriate procedures for dealing with Rule 23, Fed. R. Civ. P. proceedings, including the need for discovery and the timing thereof, dates for filing**

14

**a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

Non-applicable.

**16.3(c)(13): Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The Parties do not propose to have discovery or trial bifurcated at this time.

Defendants' Position: Defendants believe that because Compass will likely file bankruptcy, the bankruptcy court will likely issue an automatic stay as to Plaintiffs' claims against Compass for some period. Defendants have no objection to discovery and the case continuing among the other parties while the Plaintiff's claims against Compass are stayed or are otherwise ruled on, and likely disposed of, by the bankruptcy court.

**16.3(c)(14): The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

The parties propose that the pretrial conference be held on the earliest date available after the Court decides dispositive motions.

**16.3(c)(15): Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

The parties propose that the trial date be set for the soonest date available not less than 30 days after the pretrial conference.

**16.3(c)(16): Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

The Parties agree that all discovery and correspondence between counsel may be exchanged via email.

Both Parties demand a jury trial. Defendants request that the Court empanel the maximum number of 12 jurors under Rule 48 ("A jury must begin with at least 6 and no more than 12

members…"). Plaintiff will defer to the Court's judgment on the number of jurors, but has no objection to Defendants' request.

## IV. Proposed Scheduling Order

The Parties, after conferring in good faith, do not agree on the schedule. The Parties have stated their points of agreement and disagreement below. Defendants have followed the standard case track, with some compromises in favor of Plaintiff. Plaintiff has followed the complex case track. The Parties have attached separate proposed scheduling orders.

| Event | Defendants' Proposed Schedule | Plaintiff's Proposed Schedule |
|---|---|---|
| Initial Disclosures | December 16, 2025 ||
| Motion to Add Parties or Amend Pleadings | February 17, 2026 ||
| Substantial Completion of Production of Documents | March 6, 2026 ||
| Proponent's R. 26(a)(2) Statements | February 16, 2026 | April 16, 2026 |
| Opponent's R.26(a)(2) Statements | March 17, 2026 | May 18, 2026 |
| Deadline for post-R. 26(a) Discovery Requests | March 24, 2026 ||
| Close of Discovery | April 23, 2026 | June 5, 2026 |
| Dispositive Motions | May 25, 2026 | July 3, 2026 |
| Opposition Briefs | June 8, 2026 | July 31, 2026 |
| Reply Briefs | June 15, 2026 | August 14, 2026 |
| Proposed Date for Ruling(s) on Dispositive Motions | As soon as the Court is able to render a decision ||
| Pretrial Conference | Earliest date available ||
| Trial | Earliest date available not less than 30 days after pretrial conference. ||

16

Dated: December 10, 2025					Respectfully submitted,

			/s/ David L. Feinberg
Michael C. Davis (D.C. Bar No. 485311)
David L. Feinberg (D.C. Bar No. 982635)
Theodore B. Randles (D.C. Bar No. 156339)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
mcdavis@venable.com
dlfeinberg@venable.com
tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC, Michael Haft, and Robert Haft*


			/s/ Kathryn Ali
Kathryn Ali (D.C. Bar No. 994633)
Elizabeth Lockwood (D.C. Bar No. 1029746)
Meghan Palmer (D.C. Bar No. 1736144)
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
Washington, DC 20002
Tel: (202) 651-2476
katie.ali@alilockwood.com
liz.lockwood@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Plaintiff Harrison Suarez*