**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARRISON SUAREZ<br><br>*Plaintiff,*<br><br>v.<br><br>COMPASS COFFEE LLC, MICHAEL HAFT, and ROBERT HAFT<br><br>*Defendants.* | Civil Action No. 1:25-cv-89-SLS |

**JOINT NOTICE OF DISCOVERY DISPUTE RELATING TO**
**DOCUMENT PRODUCTION BY PLAINTIFF'S EXPERT JOSHUA HEDRICK**

Pursuant to Section IV of the Scheduling Order (ECF No. 32), the Parties submit this Joint Notice of Discovery Dispute regarding Defendants Michael Haft and Robert Haft's subpoena to Plaintiff's expert witness, Joshua Hedrick ("Hedrick"), of Baker Tilly Advisory Group, LP. The dispute concerns Hedrick's refusal to produce documents in response to Request Nos. 2–10 of the subpoena to him. (*See* **Exhibit A**, 8/20/26 Subpoena; **Exhibit B**, 9/3/26 Responses and Objections.) The parties have met and conferred but have been unable to resolve the dispute.

## DEFENDANTS' POSITION

In Count III of his Complaint, Plaintiff Harrison Suarez claims that in 2022 Defendants Michael Haft and the now-bankrupt Compass Coffee improperly valued his ~11% ownership share of Compass. *Id.* at ¶¶ 8–10. Plaintiff's expert Mr. Hedrick opines that Compass was worth $31.40 million and that Plaintiff's share was worth $3.44 million—by excluding all debt from Compass's balance sheet.[1]

Defendants believe Hendrick likely used a materially different valuation procedure in his prior work. Examples of that prior work will undermine his opinions and his credibility. Thus, Defendants' Request Nos. 2–10 seek final expert reports and related materials authored by Hedrick over the past five years on topics that correspond directly to the specific methodologies and opinions in Hedrick's expert report in this case. Hedrick can easily go through his list of cases required in Rule 26(a)(2), but he has refused to do even that.

***Past Reports are Relevant and Discoverable.*** A purpose of Rule 26(a)(2) requiring a list of past engagements is "'to enable opposing counsel to obtain prior testimony of the expert.'" *Seawolf Tankers Inc. v. Laurel Shipping LLC*, 345 F.R.D. 55, 58–59 (S.D.N.Y. 2023) (quoting *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999)). Courts consistently hold that an

[1] Mr. Hedrick also renders opinions supporting Plaintiff's RICO and fraud claims pleaded as Counts I–II.

expert's prior reports are discoverable for this purpose. *See id.* at 59–60 (ordering the production of an expert's prior reports from factually similar cases).[2] Showing the factfinder that Hedrick's opinions are unsound and not credible is relevant to Defendants' defense that Plaintiff's valuation was properly performed in 2022.

***Confidentiality Concerns Are Addressed by the Protective Order.*** Hedrick objects that his prior reports contain confidential third-party financial data. But the parties have entered a Protective Order in this case, which permits designation of that material as "Confidential" so that it will never be made public and will only be used for a litigation purpose. This mitigates any confidentiality concern. *See, e.g., In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

***The Requests Are Not Unduly Burdensome.*** This District requires specific facts to support an undue burden argument, which Hedrick has not provided. *See Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018).[3] His CV lists approximately 17 matters. He claims that he authors "over 100 reports" per year, making a five-year search burdensome. He has not performed any search of which reports would be responsive or would require him to stamp the

---

[2] *See also Sherrod v. Williams*, No. 3:14-cv-454, 2018 WL 8805194, at *2 (S.D. Ohio July 6, 2018) (previous reports from similar cases are "discoverable" and "do not impose an undue burden on either" the party or the expert); *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 594 (E.D. Tex. 2003) (requiring production of prior expert reports over past five years by expert for party); *Ladd Furniture, Inc. v. Ernst & Young,* No. 2:95CV00403, 1998 WL 1093901, at *10-11 (M.D.N.C. Aug.27, 1998) (compelling production of prior expert reports and prior deposition and trial testimony dating back six years); *Expeditors Int'l of Washington, Inc. v. Vastera, Inc.*, No. 04 C 0321, 2004 WL 406999, at *4 (N.D. Ill. Feb. 26, 2004) (compelling production of prior expert reports and prior deposition and trial testimony dating back four years).

[3] The factors that the Court considers include (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit[.]" Fed. R. Civ. P. 26(b)(1), (2)(C). Defendants submit that all factors support its subpoena. The subpoena is not cumulative or duplicative with any other request, cannot be obtained from any other sources, and is proportional to the needs of the case. Plaintiff seeks massive damages for an alleged RICO/fraud conspiracy (at least $51 million in trebled damages per the complaint), and Hedrick is the sole expert supporting that claim.

document "Confidential" before producing.

***The Requests Are Narrowly Tailored, Not Overbroad.*** Each request is narrowly tailored to reach a specific methodology or position taken in Hedrick's expert report. Defendants do not seek all of his prior opinions but only those bearing on issues in the current dispute, such as his opinion on debt treatment in enterprise value (Requests 2–3, 7), fair value versus fair market value (Request 4), ownership interest valuation in buyout disputes (Request 5), valuation of hospitality businesses such as Compass (Request 6), brand valuation (Requests 8–9), and reliance on non-binding indications of interest (Request 10).

## PLAINTIFF'S POSITION

**This Discovery is Premature.** Mr. Hedrick has largely complied with Defendants' sweeping, 20-request subpoena, and the proper vehicle for further testing his credibility and opinions is his deposition, not a raid on his client files in the hopes of turning up impeachment material. Defendants have not yet asked Mr. Hedrick the questions their subpoena targets, and they cite no authority permitting them to skip that step. Neither Rule 26 nor Rule 45 lets a party rummage through an expert's confidential client files before first testing his opinions at deposition.

**Requests 2–10 are Overbroad and Disproportionate.** Courts rarely require experts to turn over unrelated prior expert reports, and Defendants don't cite any case that looks anything like this one. Rather, their cases establish only that experts' prior reports may be discoverable when the expert expressly concedes (*Sherrod*) or doesn't meaningfully object to the requests (*Ladd, Expeditors Int'l*), which isn't the case here. Nor do Defendants seek the narrowly tailored information ordered in Defendants' other cases (*Seawolf* and *Hussey*), which limited scope by both industry and the initial cause of the dispute.[4] And while Defendants characterize their requests as

---

[4] For example, the *Seawolf* court expressly rejected discovery of reports on pricing or hedging of oil, instead limiting the scope to expert reports on delayed shipments of oil, the specific issue in that case. 345 F.R.D. at 58–59.

seeking only "specific methodolog[ies] or position[s]," their requests reach far more broadly. As just one example, Request 6 demands every report from the past five years where Mr. Hedrick valued a "restaurant, café, coffee shop, food-service company, hospitality business, or other consumer-facing retail business"—a category broad enough to sweep in clothing stores, stadiums, pet groomers, hotel chains, and other businesses with no relevance to the issues in this case.

**Requests 2–10 are Unduly Burdensome.** Defendants also materially understate the burden imposed by their requests. The 17 matters on Mr. Hedrick's CV are just those in which he testified; what the subpoena seeks is five years of work across hundreds of his reports. Compliance would require Mr. Hedrick to first identify responsive reports across broad subject-matter categories and then review each for third-party confidentiality obligations, protective-order restrictions, and consent or redaction requirements. Defendants do not cite a single case where a court ordered disclosure in these circumstances, and there is ample contrary authority.[5] To the extent further substantiation is necessary, Mr. Hedrick will attest to the burdens of compliance and that, in nearly twenty years of practice, he has never been required to produce anything like this.

**The Protective Order Is Not a Cure-All.** Defendants conflate control over produced materials with authority to disclose them. A protective order restricts what Defendants may do

[5] *See e.g.*, *Von Schwab v. AAA Fire & Cas. Ins. Co.*, No. 114-cv-00183, 2015 WL 1840123, at *3 (D. Colo. Apr. 21, 2015) (quashing expert subpoena, finding "speculation" as to potential bias was "not a sufficient ground to burden [expert] with the task of sifting through materials in the unrelated expert reports to determine whether such reports contain confidential materials"); *Jackson v. Dollar Gen. Store*, No. 2:11-cv-00726, 2014 WL 540828, at *3 (D. Utah Feb. 10, 2014) (rejecting compulsion of expert reports from unrelated litigation); *Burch v. Qwest Commc'ns Int'l, Inc.*, No. 06-cv-3523, 2009 WL 10677526, at *1 (D. Minn. Jan. 14, 2009) (rejecting compulsion of expert work from just five prior cases as unduly burdensome); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-cv-11295, 2003 WL 22227959, at *3 (S.D.N.Y. Sept. 26, 2003) (rejecting compulsion of expert's prior unrelated reports where party's argument for compulsion was that prior reports went to expert's credibility); *W. Res. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 1822428, at *3 (D. Kan. July 23, 2002) (rejecting compulsion of requests for documents relating to expert's work in other cases involving same parties/subjects as overbroad); *Surles v. Air France*, No. 00CIV5004, 2001 WL 815522, at *7 (S.D.N.Y. July 19, 2001) (rejecting compulsion of expert reports from prior cases, regardless of subject matter), *aff'd*, No. 00CIV5004, 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001); *Trunk v. Midwest Rubber & Supply Co.*, 175 F.R.D. 664, 665 (D. Colo. 1997) (expert's "conclusions and opinions offered in unrelated litigation" were outside scope of permissible discovery and disclosure would impose undue burdens).

with materials after production; it does not authorize Mr. Hedrick to disclose his non-party clients' confidential information in the first place. *See, e.g.*, *Dering v. Serv. Experts All. LLC*, No. 106-cv-00357, 2007 WL 4299968, at *3 (N.D. Ga. Dec. 6, 2007) (denying compulsion of 43 prior expert reports governed by confidentiality agreements despite party's claimed need to probe whether expert previously used same valuation methodology). Baker Tilly's standard engagement terms make client work product confidential, require client notice, and bar disclosure absent consent or required by law or legal process. The American Institute of CPAs Code and National Association of Certified Valuators and Analysts' standards impose similar bars. So for each of the hundreds of client reports Defendants seek from unrelated matters, Mr. Hedrick would have to independently assess confidentiality restrictions, notice or consent obligations, and redactions. Those burdens are not solved by the protective order. Defendants' cited cases stand for the uncontroversial proposition that confidentiality concerns may be managed during otherwise proper discovery; they do not hold that a protective order overrides a non-party expert's contractual or other obligations to absent clients or justifies a sweeping pre-deposition search of unrelated confidential reports.

* * *

For these reasons, the Court should sustain Mr. Hedrick's objections to Requests 2–10. And because Defendants failed to "take reasonable steps to avoid imposing undue burden" on Mr. Hedrick and instead pursued this dispute prematurely and without substantial justification, Plaintiff requests his fees and costs. *See* Fed. R. Civ. P. 45(d)(1) & 37(a)(5).

**<u>PROPOSED DATES FOR CONFERENCE</u>**

Pursuant to Section IV of the Scheduling Order, the parties are jointly available for an on-the-record videoconference or teleconference on the following dates and times:

Friday, September 18, 2026, between 3pm and 4pm;

Monday, September 21, 2026, between 2pm and 5pm; and

Tuesday, September 22, 2026, between 9am and 10am or between 12pm and 4pm.

Dated: September 17, 2026

Respectfully submitted,

*/s/ Kathryn Ali*

Kathryn Ali (D.C. Bar No. 994633)
Elizabeth Lockwood (D.C. Bar No. 1029746)
Meghan Palmer (D.C. Bar No. 1736144)
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
Washington, DC 20002
Tel: (202) 651-2476
katie.ali@alilockwood.com
liz.lockwood@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Plaintiff Harrison Suarez*

*/s/ David L. Feinberg*

Michael C. Davis (D.C. Bar No. 485311)
David L. Feinberg (D.C. Bar No. 982635)
Theodore B. Randles (D.C. Bar No. 156339)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
mcdavis@venable.com
dlfeinberg@venable.com
tbrandles@venable.com

*Counsel for Defendants Compass Coffee LLC, Michael Haft, and Robert Haft*